Francis **SNIDER** et al., Plaintiffs-
Appellants,

v.

**ALL STATE ADMINISTRATORS, INC.,**
et al., Defendants-Appellees.

No. 72–3326.

United States Court of Appeals,
Fifth Circuit.

July 3, 1973.

Rehearing and Rehearing En Banc
Denied Aug. 15, 1973.

Richard H. Frank, Ronald G. Meyer, Tampa, Fla., for plaintiffs-appellants.

John M. Robertson, Ronald P. Teevan, Orlando, Fla., for defendants-appellees.

Before, GEWIN, THORNBERRY and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The appellants, members of the Bricklayers, Masons and Plasterers International Union of America, Local No. 15, Florida, initiated this action to "conserve, recover and protect funds" entrusted to a health and welfare fund established under a collective bargaining agreement with certain contractor-employers. The district court enjoined further expenditure of trust funds except for specified purposes. However, the court denied all further relief for lack of jurisdiction. This appeal timely followed. We affirm.

## I. THE FACTS

While contract negotiations were under way between Local 15 and a number of bricklaying, masonry, and plastering contractors in the central Florida area, defendants George C. Stuart, president of the plaster contractors association, Don Goad, business manager of Local 15, and David W. Foley, a licensed insurance broker, organized several corporations for the purpose of administering union health and welfare trust funds.[1] The district court found that these corporations were organized in anticipation that negotiations then under way would result in the establishment of trust funds for which the defendants Goad and Stuart, through their respective positions with the union and employers, could control the selection of an administrator.

As a result of the negotiations, Local 15 and the employers' associations entered into two collective bargaining agreements, one covering plasterers and the other bricklayers and cement masons, which provided that the employers would pay certain amounts per hour worked by union employees into a health and welfare fund to be established in accordance with Section 302 of the Labor Management Relations Act of 1947, 29 U.S.C. Sec. 186.[2]

Prior to the effective date of the collective bargaining agreement, Local 15 elected Goad, and another union member, defendant C. L. Dickson, as the two trustees to represent the union. Stuart, apparently without the concurrence of other employers, selected defendants C. L. McCullough and W. S. Pyne, both former employees of Stuart's plastering company, as trustee nominees of the employers. Pursuant to the authority conferred upon them under the trust agreement, the four trustees selected All State Administrators, Inc. of Orlando as the administrator of the trust fund.

After All State of Orlando took over administration of the Fund, all monies contributed by employers were deposited in the name of the Administrator and expenses of both the Trust and the Administrator were paid out of the common fund. Among other expenditures, the Administrator paid out of trust

[1]. The six corporations organized by the defendants were: All State Administrators, Inc., All State Administrators, Inc. of Orlando, All State Administrators, Inc. of Jacksonville, All State Administrators, Inc. of Miami, All State Administrators, Inc. of Tallahassee, and All State Administrators, Inc. of Tampa. The beneficial ownership of the stock in each of the "All State" corporations was divided among defendants, Stuart, Foley, and Billie Jean Rhan, Don Goad's step-daughter. A seventh corporation, Orange Services, Inc., was organized with the plan that it would eventually serve as a holding company for the other six. The stock of Orange Services, Inc. was held by Stuart, Rhan, and John M. Tate, another insurance broker.

[2]. Both collective bargaining agreements were signed by defendant Don Goad as Business Agent of Local 15. The plasterers' contract was signed on behalf of the employers by defendant George C. Stuart as President of the Plasterers Association, Inc., Orange, Osceola, Lake, and Seminole Counties.

funds the costs and fees, including attorneys' fees incident to the incorporation of itself, of the remaining five All State corporations and of Orange Services, Inc. The Administrator also used trust funds to pay premiums on life insurance for its officers, Stuart and Foley, as well as travel and entertainment expenses unconnected with the purpose of the Trust. Trust funds were likewise used to pay entertainment expenses incident to Goad's unsuccessful campaign for reelection as Business Manager of Local 15. In addition to these expenditures, which the district court, characterized as an improper diversion of trust funds, All State of Orlando executed a lease with its president, George C. Stuart, for office space in the building occupied by the Stuart plastering company and paid the rent under this lease out of the trust fund.

Simultaneous with the selection of All State of Orlando as the Administrator of the Trust, the trustees signed an agreement with Aetna Life & Casualty Company to underwrite the health and welfare fund. This policy was placed through Aetna Agent John M. Tate, a stockholder in Orange Services, Inc. Tate agreed to rebate 70% of his commission from Aetna to defendant Foley, stockholder, secretary, and a moving party in the organization of the All State corporate family.

As a result of Union members' discontent with the management of their trust fund, Goad and Dickson were removed as union trustees and replaced by Francis Snider and Guy Ashcraft. Following an audit of the trust fund, Snider and Ashcraft initiated this action on behalf of themselves and other members of Local 15. The complaint prayed for immediate injunctive relief against the improper disbursement of trust funds. Additionally, the plaintiffs sought (a) to nullify the administration agreement between the trust fund and All State of Orlando, (b) to have the court appoint a disinterested professional administrator during the pendency of the litigation, (c) to require complete disclosure of the books and records of All State of Orlando and the fund, (d) to have the court remove the defendants from any position of trust which they occupy in connection with the fund, (e) to require the employers' association to appoint two new trustees, and (f) to order an accounting of all money due and owing to the fund from each defendant.

The district court enjoined further improper disbursements,[3] but with the exception of ordering disclosure of records, refused additional relief on the ground that federal labor statutes did not provide jurisdiction to grant the remedies sought. The order of dismissal *recommended* that, if the parties were unable to resolve their differences by compromise, they should seek relief in State courts.

## II. STATUTORY JURISDICTION

The complaint filed below sought to invoke the jurisdiction of the district court pursuant to Sec. 302(e) of the Labor Management Relations Act of 1947 [29 U.S.C. Sec. 186(e)].[4] This subsec-

---

3. The preliminary injunction entered November 4, 1969 forbade the expenditure of trust assets for any purpose other than the payment of salaries of clerical employees who perform duties associated solely with the administration of the Fund, postage, computer expense, and premiums for health insurance for Union members due to Aetna Life Insurance Company. Specifically, the defendants were enjoined from expending trust assets for legal expenses, rents, life insurance, travel expenses, and advertising. Additionally, the court required posting of a surety bond against future defalcations, periodic accounting for receipts and expenditures, and disclosure of the books and records of the trust fund and of defendant All State Administrators, Inc.

4. (e) The district courts of the United States and the United States courts of the Territories and possessions shall have jurisdiction, for cause shown, and subject to the provisions of section 381 of Title 28 (relating to notice to opposite party) to restrain violations of this section, without regard to the provisions of section 17 of Title 15 and section 52 of this title, and the provisions of sections 101–115 of this title.

tion provides that the district court shall have jurisdiction to restrain violations of Sec. 302 [29 U.S.C. Sec. 186], which restricts payments or loans by employers to employee representatives, to labor organizations, and to employees in excess of their normal compensation. In thus limiting its judicial function to the grant of injunctive relief against future diversion of trust funds, the district court followed the decisions of four other courts of appeal which have similarly interpreted the jurisdictional grant of Sec. 302(e). Bowers v. Ulpiano Casal, Inc., 393 F.2d 421 (1st Cir. 1968); Moyer v. Kirkpatrick, 387 F.2d 955 (3rd Cir. 1968), aff'g 265 F.Supp. 348 (E.D.Pa. 1967); Blassie v. Kroger Co., 345 F.2d 58 (8th Cir. 1965); and Employing Plasterers Ass'n v. Journeymen Plasterers, 279 F.2d 92 (7th Cir. 1960).

■ The scope of federal court jurisdiction under Sec. 302(e) is a question of first impression in this circuit. Cf. Pidgeon v. Brunswick Port Auth., 324 F.Supp. 140 (S.D.Ga.1971). We are persuaded, however, by the weight of reason and authority and by the plain language of the statute that district court jurisdiction under Sec. 302(e) is limited to restraining future violations of the statute and does not include granting relief by way of accounting, receivership, or removal of defalcating trustees or administrators.

■ Trust funds for the benefit of union members are established under the laws of the respective states. Federal law affects union trust funds only to the extent that Congress has elected to exempt employer contributions to such funds made under the terms of a labor-management contract from the general prohibition on employer payments to employee organizations. While Congress thought it necessary in order to prevent potential abuse of this exemption to stipulate the conditions under which payments can be legally made, State authority remains the legal foundation upon which such funds are constructed. In Arroyo v. United States, a case in-volving a criminal prosecution of a larcenous trustee of a union welfare fund, the Supreme Court described the purposes and the jurisdictional scope of Sec. 302 as follows:

"Congress believed that if welfare funds were established which did not define with specificity the benefits payable thereunder, a substantial danger existed that such funds might be employed to perpetuate control of union officers, for political purposes, or even for personal gain. . . . To remove these dangers, specific standards were established to assure that welfare funds would be established only for purposes which Congress considered proper and extended only for the purposes for which they were established. . . . Continuing compliance with these standards in the administration of welfare funds was [see 359 U.S.] made explicitly enforceable in federal district courts by civil proceedings under § 302(e). The legislative history is devoid of any suggestion that defalcating trustees were to be held accountable under federal law, except by way of the injunctive remedy provided in that subsection." 359 U.S. 419, 426–427, 79 S.Ct. 864, 868–869, 3 L.Ed.2d 915 (1959).

■ In actions brought under section 302(e), a district court is in nowise limited in how deeply it may inquire into the structure and the administration of a union welfare trust fund into which employers have made contributions since a detailed study may be necessary to determine whether or not violations of federal law have occurred which would necessitate injunctive relief. However, the federal court's ultimate exercise of adjudicatory power under this section is limited to the prevention of future violations since the Congress, as architect of its jurisdictional gambit, has not chosen to empower it to require an accounting or similar noninjunctive relief. Blassie v. Kroger Company, supra, 345 F.2d at 67; Employing Plasterers Ass'n v. Journeymen Plasterers, supra, 279 F.2d at 97.

## III. PENDENT JURISDICTION

■ *Arroyo* and numerous lower court decisions have emphasized that breaches of fiduciary duty by trustees and administrators of union welfare funds constitute violations of state law governing the management of trust property. Pointing out that their complaint stated grounds for relief under state law, the appellants suggest that the district court was empowered to grant the relief sought under the doctrine of pendent jurisdiction.

That we agree with this principle as an abstract assertion does not change the outcome here. Pendent jurisdiction of a federal court to entertain both federal and state claims in a single action exists wherever the relationship between the two claims

> . . . permits the conclusion that the entire action before the court comprises but one constitutional "case." . . . The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole. (Emphasis in original.)

United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). See also Connecticut General Life Ins. Co. v. Craton, 405 F.2d 41, 48–49 (5th Cir. 1968); Whirl v. Kern, 407 F.2d 781, 793 (5th Cir.), cert. denied 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969). The *Gibbs* court distinguished sharply, however, between the constitutional power to entertain state law claims under pendent jurisdiction and the discretionary exercise of that power.

> "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.

Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims. . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. . . . [I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong." 383 U.S. at 726–727, 86 S.Ct. at 1139.

The theory that the doctrine of pendent jurisdiction gives federal district courts plenary authority to adjudicate state law claims in cases involving union welfare trust funds was first suggested by the First Circuit in Copra v. Suro, 236 F.2d 107, 116 (1956):

> "In the course of giving an injunction that falls within this narrower scope of § 302(e), the district court can add to its decision, we believe, the resolution of questions, such as those raised in the instant case. . . . [O]nce a *case* is brought clearly within the scope of the § 302(e) jurisdiction, there will not be any serious limitations on the power of the district court, as a court of equity, to dispose of the entire controversy between all the parties who were brought into court because of their interest in the narrower issue." (Emphasis in original.) [5]

The exercise of pendent jurisdiction over state law claims is particularly appropriate in actions brought for injunctive relief under Sec. 302(e) because the

---

5. But cf. Bowers v. Ulpiano Casal, Inc., supra, 393 F.2d at 423–424.

state claims based on abuse of welfare trusts are closely tied to questions of federal labor policy. See Giordani v. Hoffmann, 295 F.Supp. 463, 471–472 (E.D.Pa.1969); Insley v. Joyce, 330 F. Supp. 1228, 1234 (N.D.Ill.1971).

■ However, while we believe that the district court could have exercised pendent jurisdiction over all the claims presented in the complaint and considered the propriety of granting any of the types of relief sought which it found appropriate, its refusal to do more than act on the prayer for restraint was a matter of discretion.

We refuse, in this case, to set aside that decision for two reasons. First, it appears that completely adequate state court relief is available to the appellants. Second, the collective bargaining contract and trust agreement which gave rise to this litigation expired on February 28, 1973, long before this case was orally argued before us on May 28, 1973. Except for the accounting, all the relief sought, e. g., setting aside the administrator's contract, appointment of a receiver, and removal of the employer-appointed trustees, was after that date free to be obtained by a new trust arrangement to be worked out between the union and the employers. Accordingly, to that extent those issues are now moot.

## IV.   ATTORNEYS' FEES

■ The appellants also appeal from the refusal of the district court to assess costs, including attorneys' fees, against the defendants. Attorneys' fees may, of course, be awarded in the absence of specific statutory authority where a party has by his own effort and expense preserved a fund which benefits others. Mills v. Electric Auto-Lite, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). In the present case, the appellants obtained a preliminary injunction against improper disbursements of trust funds and compelling disclosure of books and records. However, the election of the appellants as trustees of the fund prior to the initiation of this litigation

had the practical effect of terminating questionable disbursements, since from that time they were able to prevent such practices. Likewise, the books and records of the fund were open to inspection and to audit prior to the initiation of this litigation. As to the further relief sought in regard to the recovery and conservation of trust property, we have, in this opinion, affirmed the district court's order of dismissal. Thus, we find an insufficient connection between the appellants' prosecution of this present action and the preservation of welfare trust funds to require reversal of the district court's decision in regard to costs and counsel fees. Compare Thomas v. Honeybrook Mines, Inc., 428 F.2d 981, 985–986 (3d Cir. 1970).

## CONCLUSION

Since the district court's statutory jurisdiction under Section 302(e) of the Labor Management Relations Act extended only to the granting of injunctive relief, and since its refusal to grant other relief under the doctrine of pendent jurisdiction was in no sense an abuse of its discretion, the order of dismissal is

Affirmed.