John BOWERS, as Trustee of Local 1575, International Longshoremen's Association, AFL–CIO, et al., Plaintiffs-Appellants,

v.

Eusebio G. MORENO et al., Defendants-Appellees.

No. 75–1160.

United States Court of Appeals, First Circuit.

Submitted June 6, 1975.

Decided Aug. 11, 1975.

Martin Markson, New York City, Juan F. Doval, Rio Piedras, P. R., Seymour M. Waldman, Waldman & Waldman, New York City, and Francis Doval, Colorado & Carlo, Hato Rey, P. R., on brief for appellants.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This is an interlocutory appeal, the matter having been certified to us by the district court under 28 U.S.C. § 1292(b). The issues are still jurisdictional, as they were when we decided *Bowers v. Ulpiano Casal, Inc.*, 393 F.2d 421 (1st Cir. 1968), involving the same litigation.

For a description of the context and major allegations, we cannot improve on the statement of the district court:

"This case arises out of an Agreement and Declaration of Trust made between the International Longshoremen's Association, for and on behalf of Local 1575 and other ILA local unions, and certain shipping and stevedoring employers. Pursuant to the terms of the Trust Agreement, each employer is required to pay certain sums of money to the ILA–PRSSA Welfare Fund. The Welfare Fund is a general fund

which consists of five separate funds. The members of Local 1575 are the intended beneficiaries of the Welfare Fund.

"The complaint alleges: that some present and former [union and employer] trustees of the Welfare Fund, former attorneys of the Fund and of Local 1575, unlawfully and in breach of their fiduciary duties, created the ILA–PRSSA Welfare Fund Housing Project; that defendant trustees established the Housing Project as a separate entity and subsidiary of the ILA–PRSSA Welfare Fund so that they could unlawfully and in breach of their duty transfer into the Housing Project monies that were lawfully intended to be deposited in the Welfare Fund; and that the defendant trustees illegally, imprudently, and in violation of their fiduciary duties, together with a speculative housing project builder, La Providencia Development Corporation, and other corporate and individual defendants, performed certain acts which were prejudicial to the rights of the Welfare Fund's beneficiaries."

Specifically, the acts alleged included the improper conveyance of 383.5 cuerdas of land in Puerto Rico purchased with Fund monies to the Housing Project; the transfer by the Project to defendant Moreno, a union trustee of the Fund, without consideration, of 30.2 cuerdas; an imprudent contract with La Providencia to develop the remaining land; the sale of lots by La Providencia, with no accounting for down payments and no posting of required performance bonds; the unjustified waiver of bonding requirements by the Fund and the Project; the unjustified granting of loans to La Providencia to discharge its obligations; the execution by the Project of an unauthorized mortgage to a banking firm; the knowing acquiescence by defendants in a foreclosure action by the mortgagee; and the receipt, with knowledge of illegality and breach of trust, of Fund monies in payment of La Providencia's obligations by several corporations. We affirmed the dismissal of a bank and five other corporate defendants sued under the latter three claims in *Bowers v. Ulpiano Casal, Inc., supra.*

The question was posed as follows by the district judge, who, we add, was the fourth to endeavor to make progress in this litigation:

"The original complaint in this case was filed on November 8, 1966. After the passage of eight years, the basic jurisdictional question has yet to be decided: Does the federal court have jurisdiction over the parties under 29 U.S.C. § 501 of the Landrum-Griffin Act and/or Sections 301 and 302 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §§ 185 and 186?"

In light of our later discussion of pendent jurisdiction, we think it useful to describe in some detail the parties and the relief sought. The parties are the following. Plaintiff Bowers is a trustee of Local 1575, whose members are the beneficiaries of the Fund and the supposed principal beneficiaries of the housing development.[1] He also represents intervening persons who have made down payments on houses which were to have been built on the land in question. The Fund is also a plaintiff. The defendants (some of whom fit into more than one of the following categories) are four employer trustees of the Fund, five union trustees of the Fund, the Project, two attorneys for the Fund and Project (one also being attorney for the local union), La Providencia and its officers, stockholders, and directors (including one of the attorneys), and another corporation and its controlling stockholder.

---

1. He was appointed a trustee of Local 1575 by the International pursuant to its powers under its constitution and §§ 301–304 of the LMRDA, 29 U.S.C. §§ 461–464 providing for the establishment of a trusteeship "in accordance with the constitution [of the International] . . . for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization." 29 U.S.C. § 462.

The district court has well summarized the relief sought:

"Cutting through the maze of legal maneuverings that this case has produced, the area of key concern is the ownership and legal control of the land purchased by the Housing Project. The land is approximately worth $2,000,000. Plaintiffs seek this court to require defending Housing Project and its purported members or directors [and defendant union trustee Moreno] to convey to them good and marketable title to the property in question. Plaintiffs also seek to enjoin the defendants from engaging in the following activities: selling or offering for sale the property in question; taking deposits or downpayments for houses to be built on the property in question; or engaging in any activity which will encumber all or part of the property in question. In addition to the injunctive relief sought, plaintiffs ask that the trustees be required to render a full, just and complete accounting of any and all transactions and dealings and all monies received and disbursed by them in their capacities as trustees of the ILA–PRSSA Fund. Finally, plaintiffs ask that the defendant corporations be required to render a full and just accounting of all monies received as a result of their transactions with the Welfare and Housing Project Funds, and that they be required to pay over all monies and properties found upon such accounting to belong to said Welfare Fund."

To this we add the requests that certain agreements between the Project and La Providencia, debts from the Fund and Project to certain corporations, and the Project's mortgage notes be cancelled and that certain corporations refund monies to the Fund. The assessment of damages, other relief and attorneys' fees are also prayed for.

The district court held that plaintiff Bowers was a proper party; that under 29 U.S.C. § 501 the court had jurisdiction over the union trustees of the Fund but not the employer trustees;[2] that the court had no jurisdiction over employer trustees under section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185, since they were not, in this context representatives of the employers and there was no allegation of a breach of the Fund agreement; that, while employer trustees were suable as representatives of the employees under section 302 of LMRA, 29 U.S.C. § 186(e), the alleged misdeeds were not such "structural violations" going to the integrity of the Fund and its conformity to statutory requirements as to give jurisdiction under this section; and, finally, that the court did have jurisdiction over the remaining defendants who were not union trustees, under the doctrine of pendent jurisdiction.

The district court twice certified the question of jurisdiction for appeal under 28 U.S.C. § 1292(b), See In re La Providencia Development Corporation, 515 F.2d 94 (1st Cir. 1975). Although the defendants failed on both occasions to make proper application to this court for permission to take an interlocutory appeal, plaintiffs sought and were granted leave to appeal the denial of section 302 jurisdiction. Since jurisdiction is always a matter of concern, whether raised by the parties or not, and since in any appeal of the final judgment ultimately entered by the district court we will have to confront questions of jurisdiction which we leave unresolved in our decision of the present appeal, we also scrutinize the district court's assertion of jurisdiction under the theory of pendent jurisdiction.

■ We first consider plaintiffs' appeal from a denial of jurisdiction under section 302. This section states that "It shall be unlawful for any employer . . . to pay, lend, or deliver, any money or other thing of value (1) to any representative of any of his employees

---

2. As we note, infra, no appeal was taken from this finding. We deem this so plainly correct as not to warrant further discussion.

. . . with intent to influence him . . . as a representative of employees." Certain exceptions, here irrelevant, are provided for. The critical section, § 302(e), provides that district courts "have jurisdiction . . . to restrain violations of this section."

Plaintiffs confront our statement in *Bowers v. Ulpiano Casal, Inc., supra,* 393 F.2d at 424, which described the violations of § 302 subject to restraint by a district court as those constituting "violations of basic structure, as determined by the Congress, not violations of fiduciary obligations or standards of prudence in the administration of the trust fund." This is admittedly a severe standard, but one which we concluded was compelled by legislative history and followed by the majority of cases.

We think that the standard adopted in *Ulpiano Casal* remains the generally accepted standard today, although courts have been understandably tempted to denominate some egregious conduct a "structural violation". In *Giordani v. Hoffmann,* 295 F.Supp. 463 (E.D.Pa. 1969), and in *Porter v. Teamsters Health, Welfare and Life Insurance Fund,* 321 F.Supp. 101 (E.D.Pa.1970), direct diversions of funds from employers to employee representatives were held to constitute such violations, the court observing in each case that the misuse of funds threw doubt on whether the fund conformed to the basic requirement of being for the sole and exclusive benefit of employees. Plaintiffs lay major stress on *Haley v. Palatnik,* 509 F.2d 1038 (2d Cir. 1975), where the court viewed section 302 as applicable to the actions of employer trustees in creating the high salaried post of fund administrator for a union trustee an official threatened with defeat in an upcoming election. The prospective diversion of fund monies in the form of salary payments to the ad-

ministrator would exceed not only the fund's net income but anticipated gross receipts. The fund would have become "simply a conduit for the employer payment." *Id.* at 1042. We would not disagree with this result; to saddle a small fund with an administrator whose salary would effectively render the fund useless for the intended purpose would seem to go to the core of affecting its structure.

Here we cannot say that the alleged breaches of fiduciary duty or breaches of contract[3] reflect any structural defects in the Fund. Moreover, even were we to deem *Haley* applicable and controlling, plaintiffs would face the limitation of relief authorized by § 302(e). As we noted in *Ulpiano Casal, supra,* 393 F.2d at 426, "subsection (e) speaks in terms of restraining action, [not of] cancellation of a mortgage and the repayment of liquidated sums." Any ultimate relief given in *Haley* would similarly be limited to enjoining future payments. *See also Snider v. All State Administrators, Inc.,* 481 F.2d 387 (5th Cir. 1973), *cert. denied,* 414 U.S. 685, 94 S.Ct. 771, 39 L.Ed.2d 90 (1974).[4] In the case before us, the relief sought is the undoing of deeds done, not the prevention of future violations. We therefore affirm the district court's declination of jurisdiction under section 302.

■ This brings us to the issue of the court's assertion of pendent jurisdiction over the employer trustees which we notice sua sponte for reasons we have stated. The district court, having held the complaint to allege facts sufficient to support a state cause of action against both union and employer trustees for breach of fiduciary duty, noted the authority of a federal court, recognized by *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), to take jurisdiction over state claims if they arose from a "common

---

3. The allegation that the Project conveyed 30.2 cuerdas to union trustee Moreno without consideration may well charge a violation of the Fund agreement.

4. The district court for the Eastern District of Pennsylvania has recognized a broader scope

of relief in a series of cases, *Raymond v. Hoffmann,* 284 F.Supp. 596, 601–602 (1966); *Giordani v. Hoffmann,* 295 F.Supp. 463, 472 n. 3 (1969); and *Porter v. Teamsters Health, Welfare and Life Insurance Fund,* 321 F.Supp. 101, 104 (1970).

nucleus of operative fact" and are such that a plaintiff "would ordinarily try them all in one judicial proceeding." [5] The court was fully aware of the traditional application of the doctrine of pendent jurisdiction only to cases where the parties to the federal and state causes were identical. But it also noted the new scope suggested for "pendent parties" by *Moor v. County of Alameda*, 411 U.S. 693, 713–715, 93 S.Ct. 1785, 1797, 36 L.Ed.2d 596 (1973), where Mr. Justice Marshall, speaking for eight Justices, said:

"Numerous decisions throughout the courts of appeals since *Gibbs* have recognized the existence of judicial power to hear pendent claims involving pendent parties where 'the entire action before the court comprises but one constitutional "case" ' as defined in *Gibbs*. . . . Moreover, the exercise of federal jurisdiction over claims against parties as to whom there exists no independent basis for federal jurisdiction finds substantial analogues in the joinder of new parties under the well-established doctrine of ancillary jurisdiction in the context of compulsory counterclaims under Fed.Rules Civ. Proc. 13(a) and 13(h), and in the context of third-party claims under Fed. Rule Civ.Proc. 14(a). At the same time, the County counsels that the Court should not be quick to sweep state law claims against an entirely new party within the jurisdiction of the lower federal courts which are courts of limited jurisdiction—a jurisdiction subject, within the limits of the Constitution, to the will of Congress, not the courts. Whether there exists judicial power to hear the state law claims against the County is, in short, a subtle and complex question with far-reaching implications." [footnotes and citations omitted]

The district court sought to apply the pendent jurisdiction guidelines of "judicial economy, convenience and fairness to [the] litigants", *Moor, supra*, 411 U.S. at 712, 93 S.Ct. at 1797. Its decision to exercise its discretion was based on the following considerations: the allegation of an "intricate financial conspiracy", indicating the wastefulness of multiple separate trials; the doubtful ability of the court to provide effective relief involving the real estate purchased with Fund monies if only the union trustees remained in the case; and the close nexus between the state claims and federal labor policy, citing *Snider v. All State Administrators, Inc., supra*, 481 F.2d at 391–392.

We think that the district court exercised its discretion properly and wisely. This case is one where the primary cause of action involved a federal question— the type of case where "The considerations for allowing 'pendent parties' . . . may well be more compelling than for doing so when the only effect is to broaden the scope—and attractiveness—of diversity jurisdiction. [footnote omitted]" 13 Wright, Miller & Cooper, Federal Practice and Procedure § 357 at 462. As a commentator recently observed:

"Where the jurisdiction-conferring claim is a federal question over which state courts have concurrent jurisdiction—for example civil rights and general federal questions—fairness does not demand that both actions be brought in the federal forum, though judicial economy may. However, when the jurisdiction-conferring claim must be brought in federal court, both claims may be heard in the same forum only if pendent jurisdiction is exercised. In these cases, the rationale favoring settlement of all issues in a single forum is most convincing. [footnotes omitted]" Comment, *Federal Pendent Subject Matter Jurisdiction—The Doctrine of United Mine Workers v. Gibbs Extended to Persons*

---

**5.** Our consideration of pendent jurisdiction is confined by parameters inherent in the posture of the case. Neither plaintiffs nor defendants have briefed state law questions before us, and we hold only that if the complaint states facts constituting a cause of action for breach of fiduciary duty under Puerto Rico law, the exercise of pendent jurisdiction here is appropriate.

*Not Party to the Jurisdiction-Conferring Claims,* 73 Col.L.Rev. 153, 165 (1973) [hereinafter Comment].

We note also other factors which bear on the soundness of the discretion exercised by the district court. The federal claim cannot be said to be of minor importance compared to the state claims. The very real possibilities of conflicting results from separate state and federal trials are avoided. This would not appear to be a case where defendants by standing trial in federal court would lose any advantage of state procedural law, nor, since trial would be held in San Juan, are defendants put to defend themselves in an inconvenient forum. The allegations of the complaint, such as those charging breach of fiduciary obligation, are not likely to give rise to legal questions of first impression, where the Commonwealth courts have not spoken; this case, insofar as the state claims are concerned, does not present the first occasion to interpret a statute or to apply a judge-made principle. *See* Comment, pp. 166–169.[6]

Most relevantly, however, as our description of the allegations, listing of the parties, and summary of the relief requested indicate, this case is one where, if there had not existed a doctrine allowing federal jurisdiction over "pendent parties", it would have had to be invented. The defendants, according to the allegations, had overlapping shareholdings, directorial memberships and other relationships; the alleged conspiracy began in the Fund but extended far beyond it; the nucleus of facts necessary to prove that the union trustees defaulted their fiduciary obligations would also be necessary to prove the state claims; the relief requested would require that many of the defendants be subject to the court's jurisdiction. As Judge Friendly observed in *Astor-Honor, Inc. v. Grosset & Dunlap, Inc.,* 441 F.2d 627, 629–630 (1971), "It would be an unjustifiable

waste of judicial and professional time— indeed, a travesty on sound judicial administration—to allow [plaintiff] to try its unfair competition claim against [defendants A and B] in federal court but to require it to prosecute a claim involving precisely the same facts against [defendant C] 'in a State court a block away.'"

*The judgment is affirmed.*

6. We add that the stimulus for this pre-*Moor* comment was a trilogy of seminal Second Circuit cases authored by Judge Friendly, *Astor-Honor, Inc. v. Grosset & Dunlap, Inc.,* 441 F.2d 627 (1971); *Leather's Best, Inc. v. S. S. Mor-* *maclynx,* 451 F.2d 800 (1971); and *Almendres v. Wyman,* 453 F.2d 1075 (1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972).