ROXSE HOMES, INC. et al., Plaintiffs,

v.

Brock ADAMS et al., Defendants.

Civ. A. No. 78–1671–K.

United States District Court,
D. Massachusetts.

Aug. 8, 1979.

Owens & Associates, Henry F. Owens, III, Boston, Mass., Stroock & Stroock & Lavan, Samuel C. Jackson, Michael H. Mobbs, Washington, D. C., for plaintiffs.

Carolyn S. Grace, Asst. U. S. Atty., Boston, Mass., for Adams.

Weston, Patrick, Willard & Redding, Thomas B. Arnold, R. Sarah Compton, Boston, Mass., for Community Development Corp. of Boston, Inc.

Stephen M. Leonard, Jose R. Allen, Asst. Attys. Gen., Boston, Mass., for Salvucci, Carroll and Murphy.

## MEMORANDUM

KEETON, District Judge.

### I. The Nature of the Case

The matter at issue is a motion to dismiss filed by the parties designated as "State Defendants," as explained below.

Plaintiffs bring an action, in two counts, to enjoin construction of Crosstown Street, a thirteen-block long, four-lane roadway, 50 feet wide, between Massachusetts Avenue and Columbus Avenue in Roxbury. The area to be occupied by the street is within a corridor cleared in the late 1960's in preparation for construction of the Inner Belt, a project later abandoned.

Count I alleges violations of the National Environmental Policy Act (NEPA) and related provisions, 42 U.S.C. §§ 4321–4369, and asserts jurisdiction based on 28 U.S.C. §§ 1331 ("the matter in controversy . . . arises under the Constitution, laws, or treaties of the United States") and 1361 ("man-

damus to compel an officer or employee of the United States *or any agency thereof to perform a duty owed to the plaintiff*") and the Administrative Procedure Act, 5 U.S.C. §§ 551–559. Count II alleges violations of the Massachusetts Environmental Policy Act (MEPA), Mass.Gen.Laws c. 30, §§ 62–62H.

The initial defendants were Brock Adams, as Secretary of the U. S. Department of Transportation (the "Federal Defendant"), and three state officials (the "State Defendants"), Frederick Salvucci, Secretary of Transportation and Construction, John J. Carroll, Commissioner of Public Works, and Evelyn F. Murphy, Secretary of Environmental Affairs.

With leave of court, Community Development Corporation of Boston, Inc., intervened as a defendant.

State Defendants have moved that Count II, the MEPA-based claim, be dismissed under Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction over the subject matter and under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. They argue, *first,* that the court lacks jurisdiction over Count II because fewer persons are joined as plaintiffs than are required by Mass.Gen.Laws c. 214, § 7A; *second,* that Plaintiffs have not asserted their MEPA-based claim within the time limits specified in the statute, and therefore have failed to state a claim upon which relief can be granted;[1] and *third,* that the court should decline to take jurisdiction over Count II, which they argue is a pendent claim involving unsettled questions of state law and a pendent party, the Defendant Murphy.

## II. Does Count I State a Claim Against Defendant Murphy?

█ Allegations identifying the defendants appear in the introductory paragraph of the complaint. Allegations within Count I refer to "defendants" without limitation.

Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss affirms Plaintiffs' intent to include Defendant Murphy as a party to this count. State Defendants nevertheless argue that Count I does not state a claim against Defendant Murphy, because a charge of joint enterprise with the Federal Defendant in proceeding with a project in violation of NEPA could fairly be made only against other State Defendants and not against Defendant Murphy. Whether that be so, however, is an issue better left to resolution not on motion to dismiss but after the facts have been developed.[2] For this reason, State Defendants' request for a ruling that Count I fails to state a claim against Defendant Murphy is denied.

It may also be suggested that Count I need not be read so narrowly as joining State Defendants only on a theory of joint enterprise with the Federal Defendant. Plaintiffs may be able to offer proof entitling them to an injunction against all State Defendants, as well as the Federal Defendant, even though not proving a joint enterprise involving Defendant Murphy. This suggestion raises the difficult questions whether a state official who is not in partnership or joint enterprise with federal officials may be joined, and, secondly, upon adequate proof, may be enjoined.[3] These difficult questions need not be addressed in the present posture of the case.

## III. Issues Bearing on Pendent Jurisdiction Over Count II

### A. The Potential Pendent-Party Problem

Count I alleges a federal-law cause of action, grounded in allegations that Defendants have acted and continue to act in violation of NEPA requirements.

Count II alleges a state-law cause of action, grounded in allegations that Defendants have acted and continue to act in violation of MEPA requirements.

---

1. Intervenor-Defendant argues that the time limitations contained in MEPA are jurisdictional in nature and that consequently the court lacks jurisdiction to hear Plaintiff's MEPA-based claim.

2. The lack of any substantial conflict of interest among Murphy and other State Defendants— *see* Part IIIC(1), *infra,* may also be relevant to the "joint enterprise" issue.

3. *See e. g., Silva v. Romney,* 473 F.2d 287 (1st Cir. 1973).

Pendent jurisdiction is the only basis on which Plaintiffs assert that the court has power to and should exercise jurisdiction over Count II. Plaintiffs assert that the impact of the Crosstown Street project on the inner-city area surrounding the proposed thirteen-block roadway is at the heart of both Count I (federal) and Count II (state).

In view of the court's conclusion that Count I states a claim against Defendant Murphy as well as other State Defendants, as stated in Part II of this opinion, no pendent-party problem is currently before the court. A pendent-party problem may appear later, however, if, for example, the facts as developed show no supportable claim against Murphy under Count I, and a motion for summary judgment should be granted. In assessing the pendent jurisdiction issue now under submission, the court may appropriately take into account the prospect that a pendent-party problem may emerge in later stages of the litigation as well as the fact that the pendent-party problem is avoided at this juncture only by reason of a claim against Murphy that, when the facts are developed at trial, may prove to be without merit.

### B. Guidelines Regarding Pendent Jurisdiction

Precedents have distinguished between ancillary jurisdiction, which may be exercised when the basis for federal jurisdiction over the primary claim is diversity of citizenship, and pendent jurisdiction, which may be exercised when the primary claim is a federal-law claim.[4] The Supreme Court

has nevertheless treated ancillary and pendent jurisdiction as "two species of the same generic problem: Under what circumstances may a federal court hear and decide a state-law claim arising between citizens of the same State?"[5] Views expressed in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), and *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978),[6] mandate that inquiry into the validity of pendent jurisdiction begin with two basic questions:

(1) Does Article III permit the exercise of jurisdiction?

■ In general, the answer is affirmative if, as in the present case, the primary and pendent causes of action have a "common nucleus of operative fact" and constitute a single case or controversy in the constitutional sense.[7] Here the affirmative answer is reinforced by the fact that it may also be said, in the language of the court in *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138, that the two claims are such that Plaintiffs "would ordinarily be expected to try them all in one judicial proceeding."

A special problem arises, however, if the pendent claim involves a pendent party. The Ninth Circuit has taken the view that the assertion of pendent-party jurisdiction exceeds Article III limitations.[8] Judges of the First Circuit, however, if not directed to march to a different drumbeat are at least instructed that "the Supreme Court's cautious treatment of pendent jurisdiction does

---

**4.** *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 370, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

**5.** *Id.* at 370, 98 S.Ct. at 2400. Footnote 8 of the Court's opinion adds: "No more than in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276, is it necessary to determine here 'whether there are any "principled" differences between pendent and ancillary jurisdiction; or, if there are, what effect *Gibbs* had on such differences.' *Id.* at 13, 96 S.Ct. 2413."

**6.** This was a diversity action in which the plaintiff sought to assert a claim against a third-party defendant as to which no independent basis for federal jurisdiction existed. Thus ancillary rather than pendent jurisdiction was involved.

**7.** *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The force of *Gibbs* as precedent on other points has been undermined. See n. 10, *infra*. But *Gibbs* stands unimpeached on this point. *FDIC v. Otero*, 598 F.2d 627 (1st Cir. 1979).

**8.** *E. g., Ayala v. United States*, 550 F.2d 1196 (9th Cir. 1977). *See* 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3523.

not preclude pendent-party jurisdiction. . . . ."[9]

The Supreme Court, in *Moor v. County of Almeda*, 411 U.S. 693, 715, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973), referred to the pendent-party problem as "a subtle and complex question with far-reaching implications," reserved for another day. Again two years later, in *Aldinger*, 427 U.S. at 13, 96 S.Ct. at 2419, the Court not only declined "to formulate any general, all-encompassing jurisdictional rule" with respect to pendent parties, but also cast doubt on the usefulness of earlier precedents.[10]

(2) Has Congress, in the statutes conferring jurisdiction, negated pendent jurisdiction of the type asserted in the case at hand?

Sources of guidance for answering this second question vary with the nature of the primary cause of action.[11] In the present case, Plaintiffs assert that jurisdiction over Count I is based on three federal statutes. The first two, 28 U.S.C. §§ 1331 and 1361, concern jurisdiction over claims "arising under" federal law and a request for mandamus to compel a federal officer to perform a duty owed to the plaintiffs. Plaintiffs do

not call attention to, nor has the court found, any provision in 5 U.S.C. §§ 551–559 that adds to or modifies the basis for jurisdiction over Count I in any way that is relevant to the exercise of pendent jurisdiction over Count II. Thus, the present case differs from *Aldinger*, in which the court found a statutory negation of jurisdiction over a county.[12]

If the two basic questions of constitutional and statutory authorization are answered favorably to the exercise of pendent jurisdiction (Yes to the first question and No to the second) a third question remains:

(3) Do "prudential factors"[13] weigh more heavily for than against exercising pendent jurisdiction?

Because of the inherent nature of this third question, a trial court addressing it is guided not by rules of law ascertainable in the constitution, statutes, and precedents but instead by standards for the exercise of discretion. Moreover, even the standards are as yet mostly undeveloped, especially when pendent jurisdiction also involves a pendent party. Within this context, a court exercising discretion must identify factors

9. *FDIC v. Otero*, 598 F.2d 627 (1st Cir. 1979). In again sustaining pendent-party jurisdiction, *Otero* makes a point of doing so "on the peculiar facts" of the case before the court. 598 F.2d at 631. *See also, e. g., New Mexico v. Molybdenum Corp. of America*, 570 F.2d 1364 (10th Cir. 1978); 13 Wright, Miller, & Cooper, Federal Practice and Procedure § 3523.

10. *Bowers v. Moreno*, 520 F.2d 843 (1st Cir. 1975), is one of the earlier precedents that is to some extent undermined by *Aldinger*. In *Bowers*, the Court of Appeals for the first Circuit relied upon *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and a statement in *Moor v. County of Almeda*, 411 U.S. 693, 713, 93 S.Ct. 1785, 1797–1798, 36 L.Ed.2d 596 (1973), that numerous decisions of courts of appeals "since *Gibbs* have recognized the existence of judicial power to hear pendent claims involving pendent parties where 'the entire action before the court comprises but one constitutional "case" ' as defined in *Gibbs*." In *Aldinger* the court observes, 427 U.S. at 14, 96 S.Ct. at 2420: "The situation with respect to the joining of a new party, however, strikes us as being both factually and legally different from the situation facing the Court in *Gibbs* and its predecessors."

11. *Cf. Ortiz v. United States Government*, 595 F.2d 65, 71–73 (1st Cir. 1979).

12. That aspect of *Aldinger* concerned with suit against a county has been undermined by later developments. *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 372 n. 12, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

13. This formulation of the third question is adapted from expressions in *FDIC v. Otero*, 598 F.2d 627 (1st Cir. 1979). It must be acknowledged, however, that as a guideline quite general in nature, this formulation implies a position on issues which neither the Supreme Court nor the Court of Appeals for the First Circuit has yet answered. That is, it implies no special constraints in weighing prudential factors. Later cases may develop rules that limit the significance or the weight to be given to some of the many factors a judge may take into account when applying an unconstrained "prudential factors" test.

appropriately to be considered and make a choice on the basis of the relative weight of factors favoring and disfavoring acceptance of pendent jurisdiction.

Any list of factors, derived from experience with previous cases, will prove to be incomplete when tested against the needs of cases yet to arise. The following examination extends to factors either already identified in the cases or identifiable as consistent with them in principle.

### C. Weighing Prudential Factors

The questions in this analysis of factors are stated in a form such that affirmative answers tend to weigh in favor of accepting pendent jurisdiction, negative answers against.

(1) Can the court exercise pendent jurisdiction effectively and fairly without also exercising jurisdiction over a pendent party? [14]

In the present posture of the case at bar, as explained in Part II of this opinion, Defendant Murphy is a party to the federal-law claim, Count I, and therefore does not occupy the position of a pendent party. Even if it later develops that Murphy is not properly joined in Count I and should be dismissed, a possibility of bypassing the pendent-party problem would remain: Might Plaintiffs choose to, and properly be permitted to, dismiss Murphy from Count II and ask the court to take pendent jurisdiction over the state-law claim against the other State Defendants only, all of whom are properly joined as defendants in Count I? Though speculative at the present stage of development of the case at bar, this possibility cannot now be dismissed as wholly unlikely, and it reduces the weight against exercising pendent jurisdiction that potential involvement of a pendent party would ordinarily have.

The weight of the pendent-party factor is reduced even more in the case at bar by the relationship among Defendant Murphy and other State Defendants. They are all represented in this action by a single attorney. Such joint representation is permissible only if there is no conflict of interest among them, or only a conflict of such nature that, with full understanding, the parties jointly represented may resolve their conflicting interests in favor of a stronger mutual interest in joint representation. [15] Even though a lively imagination might identify potential conflicts of interest among Murphy and other State Defendants, not only at later stages of litigation but also in relation to this motion to dismiss, no conflict of such nature as to preclude representation of all State Defendants by a single attorney appears on the face of the record. Indeed, it is easily understandable that State Defendants, fully informed and thoughtfully considering the matter, would conclude that they all will be served best by joint representation. A decision by all of them, including Defendant Murphy, that their inter-

---

**14.** For precedents supporting consideration of this factor, *see* Part IIIB(1), *supra*.

**15.** Counsel in the case at bar have been admitted to practice before this court as persons previously admitted to the bar of the Commonwealth of Massachusetts. *See* Rule 5(a), Local Rules of the U.S. District Court for the District of Massachusetts (1967). They are guided by the Code of Professional Responsibility adopted by the Supreme Judicial Court of Massachusetts, Mass. SJC Rule 3:22, 359 Mass. 796 (1972). DR 5–105 provides as follows:

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C). (C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each. (D) If a lawyer is required to decline employment or to withdraw from employment under DR 5–105, no partner or associate of his or his firm may accept or continue such employment.

ests are so closely aligned does, however, sharply undercut the argument that Murphy's alleged position as a pendent party weighs significantly against the exercise of pendent jurisdiction.

The net negative weight of the pendent-party factor in the present case, in its present posture, is slight.

(2) Would separate federal and state trials be substantially likely to produce outcomes that are in conflict? [16]

The total procedural system, state and federal, provides opportunities to resolve conflicts, and it is at least a defensible proposition that outcomes legally recognized as conflicting should not occur if all parties exercise all their procedural rights. Nevertheless, because of either the costs of review or the risks of unforeseen procedural shoals, conflicting outcomes are possible in practice. Moreover, outcomes that intricate analysis shows to be consistent may nonetheless create a disturbing appearance of conflict. An appearance of inconsistency may be created even when federal and state claims are adjudicated in one action, but ordinarily the risks of the fact or the appearance of inconsistency and conflict of outcome are higher when the claims are adjudicated in different tribunals.

One distinctive problem of the present case arises from uncertainty about the effect that refusal to exercise pendent jurisdiction would have on time-bar contentions. State Defendants contend that the MEPA claim was already time-barred when this action was filed, regardless of which version (1974 or 1977) of the MEPA time-bar provision applies. Plaintiffs respond that neither version applies to this claim. If this court declines to exercise pendent jurisdiction, will Plaintiffs now be time-barred from starting an action in a state court, even if they would not have been time-barred had they started an action there at the time they started this action in this

court? [17] If so, though not technically inconsistent, strikingly different outcomes with respect to the MEPA claim may follow, depending on whether this court exercises or declines to exercise pendent jurisdiction. It is not clear that this difference of outcome is the kind of contrast referred to in previous cases as a conflict or appearance of conflict. Also, it might be suggested that the adverse consequence should be seen as a risk Plaintiffs took when filing the MEPA claim in this court rather than in a state court. But such an outcome would be a harsh consequence of miscalculation in the face of unsettled legal questions. If the court is free to take this factor into account in the calculus of "prudential factors" it weighs substantially in favor of exercising pendent jurisdiction.

Though having generally common objectives, NEPA and MEPA, as well as the precedents applying them, create different requirements, both substantive and procedural. Outcomes determining that a given course of conduct satisfies the requirements of one of these statutes but not the other are more likely to give the appearance of inconsistent adjudications, rather than consistent adjudications based on different federal and state regulations, if the actions are tried in different courts than if they are tried together. On this basis, independently of the problem discussed in the next preceding paragraph, this factor weighs quite significantly in favor of exercising pendent jurisdiction in this case.

(3) Would consolidation of the primary and pendent claims be likely to reduce substantially the commitment of judicial and private resources to dispute resolution? [18]

Probably the main body of evidence bearing upon whether NEPA and MEPA have been violated will be identical. Even though other potentially decisive issues

16. *See Bowers v. Moreno,* 520 F.2d 843, 848 (1st Cir. 1975).

17. One aspect of this question is whether the filing of this action would be treated as tolling limitations with respect to a new action filed in

a state court promptly after dismissal in this court.

18. *See e. g., Rosado v. Wyman,* 397 U.S. 397, 405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

bearing on the MEPA claim [19] may call for separate evidence as well as a different focus upon the evidence, the fact remains that requiring separate trials of the two cases in two separate forums would create a high risk of heavy commitment of resources to duplicative trials. Unless the state law claims were denied on "nonsubstantive" grounds (e. g., on the basis of the first or second of the points stated in Part I, *supra*), this court's rejection of pendent jurisdiction over Count II would almost certainly confront the parties with the prospect of duplicative trials of considerable length. The interests of justice are best served by avoiding the commitment of resources to duplicative trials. Among the reasons are these: First, justice priced high may be beyond the means of both parties. Second, the potential burden of high cost may fall differentially on the parties and coerce an "agreed" disposition that is at odds with declared entitlements. Third, in both state and federal courts systems, overloaded dockets are a perennial problem; requiring duplicative trials wastes scarce resources that are sorely needed in the administration of justice.

Collateral estoppel, based on final determinations first made, would serve to reduce somewhat the waste of resources involved in duplicative trials. But even this protection against wasteful duplication may be eroded by uncertainty over the scope of application of the collateral estoppel doctrine.

In the present case, the probability that consolidation of the primary and pendent claims in one judicial proceeding would reduce the commitment of public and private resources to the resolution of these disputes weighs heavily in favor of accepting pendent jurisdiction.

(4) Is the federal forum the only forum where the primary and pendent claims can be consolidated for trial? [20] If not, is the practical importance to the parties of the primary claim at least as great as that of the pendent claim?

Even though other factors make a strong case for consolidation of the primary and pendent claims in a single forum, in most instances the primary claim as well as the pendent claim could be tried in a state forum. When this is so, the ends of justice are promoted by rules and practices that encourage trial of the consolidated claims in federal courts only when the primary claim, which is the basis for federal jurisdiction, is at least as significant as the pendent claim.

In the present case, the federal and state claims are closely similar and, in general, might be regarded as equally significant. They are, however, independent claims for relief, and in this context the federal claim may be assessed as more significant because it is free of the serious procedural and limitations defenses urged against the state claim. It seems appropriate to treat this factor as weighing, by a slight margin, in favor of pendent jurisdiction.

(5) Is the federal forum more convenient? [21]

This factor bears no significant weight in the present instance, since the most likely alternative forum would be in the same community.

(6) Is it unlikely that in deciding the pendent claim the federal court will itself be required to answer unsettled questions of state law? [22]

Many unsettled issues of state law bearing upon the pendent MEPA claim have been identified in the briefs filed to support and oppose the motion to dismiss. More are likely to emerge as the case develops.[23] Il-

---

19. *See e. g.*, the discussion of distinctive state law issues in Part IV, *infra*.

20. *See, e. g., Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Ortiz v. United States Government*, 595 F.2d 65, 72 (1st Cir. 1979).

21. *See Bowers v. Moreno*, 520 F.2d 843, 848 (1st Cir. 1975).

22. *See Moor v. County of Almeda*, 411 U.S. 693, 715–717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

23. *See* Part IIIC(2), *supra*, for discussion of an additional issue that will emerge if pendent

lustrative are the legal issues involved in the first and second points stated in Part I, *supra.* Does Mass.Gen.Laws c. 214 § 7A, providing for an action to be instituted by ten or more persons, prescribe an exclusive remedy for MEPA violations and therefore require dismissal of Count II because fewer than that number of plaintiffs have been joined in this case? Is Count II barred by limitations under either the statute in effect when this controversy arose [24] or the amendment [25] enacted between that time and the filing of this action? Is the applicable time bar jurisdictional in some sense? [26]

Beyond dispute, the statutes in question do not clearly prescribe answers to these questions, and as yet they are not answered in decisions of the state courts.

The availability of clear answers in state statutes and precedents is, however, only one of the ways a federal court may be assured that it need not answer unsettled questions of state law in order to decide a pendent claim. Another way is open when the state legal system provides for certification of questions of state law to a state court. [27] Massachusetts has authorized such certification. Mass.S.J.C. Rule 3:21, 359 Mass. 790 (1971), provides as follows:

> This court may answer questions of law certified to it . . . when requested by the certifying court if there are involved in any proceeding before it questions of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court.

Availability of a certification procedure significantly reduces the weight that lack of clear answers to key questions of state law might otherwise have in the calculus of prudential factors bearing on acceptance of pendent jurisdiction. Despite special problems associated with use of the certification procedure in this instance, [28] its availability substantially reduces the weight of this factor in the calculus.

Conclusion to Part III(C)

It is often said that in determining whether to exercise its discretion to accept pendent jurisdiction a district court should consider judicial economy, convenience, and fairness to the litigants. [29] The third, fourth, and fifth of the factors treated above are directly concerned with judicial economy and convenience. Considerations of fairness are implicated in all six factors.

In summary, the first factor (pendent party) has relatively little significance in this case, and the fifth (convenience of forum) has even less. The second (risk of conflicting outcomes) and third (resources committed to dispute resolution) weigh strongly in favor of exercising pendent jurisdiction, and the fourth (relative significance of the primary claim) is a less weighty factor favorable to exercising pendent jurisdiction. The sixth factor (unsettled state law) weighs against exercising pendent jurisdiction, but does not weigh heavily in view of the availability of a procedure for certification of state-law questions to the state court. The overall analysis of prudential factors favors exercising pendent jurisdiction.

jurisdiction is not exercised in this case: Will an action filed now in state court be barred even if it would not have been barred had it been filed when this action was filed in this court?

**24.** 1972 Mass.Acts c. 781, § 2, as amended by 1974 Mass.Acts c. 257.

**25.** Mass.Gen.Laws c. 30, § 62H (added by 1977 Mass.Acts c. 947, § 1).

**26.** *See* further discussion of this question in Part IV, *infra.*

**27.** *See Harper v. Cserr*, 544 F.2d 1121, 1126 (1st Cir. 1976).

**28.** *See* Part IV, *infra.*

**29.** *See e. g., United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## IV. Certification of State-Law Questions

As the foregoing discussion of state law issues indicates,[30] in the present case the clearly identified unsettled questions of state law relate more to who may sue and when, than to what must be proved to establish a violation of MEPA and what relief may be granted. Also, the likelihood of substantial differences between NEPA and MEPA appear greater in relation to the former pair of questions than in relation to the latter pair. It might be suggested, then, that if pendent jurisdiction is accepted, the first pair of questions should be certified promptly. The suggestion of early certification might be pressed, also, on the ground that one of the unsettled state-law contentions is that the time bar is jurisdictional in some sense. That is, it is argued that this court lacks jurisdiction over Count II because the applicable state time bar is jurisdictional and not merely an affirmative defense. The request that this court dismiss *for that reason* is, however, a request that this court make a determination binding between the parties under the law of res judicata. It is thus a request that the court accept jurisdiction for this limited purpose—a request that may appropriately be made in the alternative to requesting that the court decline to exercise pendent jurisdiction. Even so, the point, if sustained, nevertheless would be jurisdictional in the sense of invalidating any determination by this court of any issue bearing on the MEPA claim other than the time-bar issue, if State Defendants' contention on that issue were sustained. Moreover, in contrast with dismissal by reason of discretionary refusal to exercise pendent jurisdiction, dismissal on the ground that the MEPA claim is time-barred, whether or not jurisdictional in essence, would preclude litigation of the MEPA claim in any other forum. Should such an issue be certified promptly?

A key difficulty with early certification arises because of the possibility that the legal questions would be answered in such a way that factual determinations would be required for adjudication of the contention that the MEPA claim is time-barred. For example, one of the potentially applicable statutes, Mass.Gen.Laws c. 30, § 62H, provides in part:

If a court determines that an agency or person proposing a project has knowingly concealed a material fact or knowingly submitted false information in any form or report required under . . . [MEPA], limits on the manner and time in which actions or proceedings may be commenced shall not apply . . . . .

The certification procedure should be used in a way that promotes judicial economy and efficiency. Early certification of abstract questions, before potentially decisive fact controversies have been resolved, may be objectionable for reasons closely analogous to those that account for generally disfavoring partial appeals within a single jurisdiction's court system. Some of the potential issues may become moot, as would appear to be likely with respect to the assertion that too few plaintiffs are joined, if Plaintiffs should ask and be granted leave to file an amended complaint joining a plainly sufficient number of plaintiffs.[31] Also, the federal-law and state-law claims are independent bases for seeking essentially the same relief, and it may well happen that none of the parties (all of whom would share in the burdens as well as the potential benefits of certification procedure) will wish to invoke the certification procedure unless and until that step appears essential to final resolution of the controversy. In any event, the parties have not requested certification and have not addressed the formulation of appropriate questions for that purpose. In this context, the court will not take the initiative for certification.

## V. Should Determination of Some of the Independent Grounds for the Motion to Dismiss Be Deferred?

Fed.R.Civ.P. 12(d) authorizes a court to order that "the hearing and deter-

---

**30.** See Part IIIC(6), *supra.*

**31.** Concerning the "relation back" of amended pleadings, *see generally* Fed.R.Civ.P. 15(c); 6

Wright & Miller, Federal Practice and Procedure §§ 1501, 1503; Mass.R.Civ.P. 15(c) and Reporter's Notes.

mination" of defenses specifically enumerated in Rule 12(b)(1) through (7) be deferred until the trial. The decision regarding deferral is discretionary.[32] In this case a "hearing" has already occurred on State Defendants' Motion to Dismiss, since oral argument was held and written submissions were filed. It seems appropriate, however, to interpret Rule 12(d) as allowing a court to defer "determination" even after "hearing," since the reasons for doing so may become manifest only after hearing has exposed them to examination. Also, when several independent grounds are asserted in support of a Rule 12(b) motion to dismiss, it seems appropriate to interpret Rule 12(d) as allowing prompt determination of some and deferral of others. So construing Rule 12(d), the court in this instance will defer determination of the grounds for dismissal based on the MEPA joinder and time-bar provisions. Ordinarily one or more parties have an interest in prompt determination of Rule 12(b) defenses to avoid costly litigation. In the present instance, however, the court finds that considerations of economy of public and private resources committed to litigation favor deferring determination of these unsettled state-law questions. As already observed in Part IV, *supra*, some or all of them may become moot or they may be decided authoritatively in other state court litigation before they need be decided here. Also, if they must be decided in this litigation, very likely it will be appropriate for this court to certify questions to the Supreme Judicial Court of Massachusetts rather than to attempt independently to decide them.

It will be ordered that determination of the MEPA-based joinder and time-bar grounds for dismissal be deferred. In other respects, the State Defendants' Motion to Dismiss will be denied.

---

32. *See generally* 5 Wright & Miller, Federal Practice and Procedure § 1373.