Wendy Susan IRWIN, Plaintiff,

v.

John CALHOUN et al., Defendants.

Civ. A. No. 80–1818–G.

United States District Court,
D. Massachusetts.

Sept. 16, 1981.

William Joyce, Boston, Mass., for plaintiff.

Elizabeth Laing, Asst. Atty. Gen., Boston, Mass., for defendants.

Francis Chase, Asst. Atty. Gen., Torts, Claims, Collections, Boston, Mass., for Calhoun.

Thomas E. Finnerty, John G. Hommel, Boston, Mass., for Bailey.

Richard Camann, Lynn, Mass., for Coko.

MEMORANDUM AND ORDER CERTIFYING QUESTION TO MASSACHUSETTS SUPREME JUDICIAL COURT

GARRITY, District Judge.

■ A dispositive question of Massachusetts law has arisen in this case, upon which there appears to be no controlling precedent in the decisions of the Supreme Judicial Court. Therefore, upon the Commonwealth's motion, and with due deference to the authority of the Supreme Judicial Court in the construction of the Commonwealth's statutory law, we hereby certify, pursuant to Supreme Judicial Court Rule 1:03, the following question:

> Does Massachusetts General Laws Chapter 258 by its terms, either expressly or impliedly, indicate the Commonwealth's consent to suit by citizens in federal as well as state courts, thereby waiving its eleventh amendment immunity?

We set forth below a statement of facts which pertain to this certified question and to the nature of the underlying controversy, all in accordance with Supreme Judicial Court Rule 1:03, § 3.

### Statement of the Case and Underlying Controversy and Order on Matters Giving Rise to this Certified Question

The plaintiff, Wendy Susan Irwin, filed a two-count complaint in federal district court on August 13, 1980. Both counts seek damages for injuries she allegedly sustained as a result of the denial of her requests for medical attention while she was confined in September of 1977 at the Department of Youth Services (DYS) facility in Charlestown, Massachusetts. Count I alleges a violation of 42 U.S.C. § 1983 by named DYS employees for depriving her rights guaranteed by the eighth and fourteenth amendments. Jurisdiction is based on 28 U.S.C. § 1331.[1] Count II, which is the subject of this certified question, alleges that the DYS negligently failed to provide plaintiff with necessary medical services.

Count II is based on the Massachusetts Tort Claims Act, Mass.Gen.Laws c. 258,[2] and undisputedly arises from a "nucleus of operative facts" in common with Count I.

---

1. 28 U.S.C.A. § 1331 (West Supp. 1981) provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

2. Mass.Gen.Laws c. 258, § 2, provides:
   Public employers shall be liable for ... personal injury ... caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his

The plaintiff therefore claims that even though Count II, as amended, includes state law claims against pendent parties, it is within the pendent jurisdiction of this court. Count II originally named Edward M. Murphy, in his capacity as Commissioner of the DYS, and Charles F. Mahoney, in his capacity as Secretary of the Massachusetts Executive Office of Human Services, as defendants. The plaintiff alleged that she had presented these defendants with a notice of her claim on August 24, 1979, pursuant to the requirements of the Massachusetts Tort Claims Act.[3] On October 6, 1980, however, the defendants Murphy and Mahoney moved to dismiss Count II because they were public employees and under Chapter 258 "the public employer is the only proper defendant." Memorandum in Support of Motion of Defendants Murphy and Mahoney to Dismiss, filed October 6, 1980, at 4. The plaintiff responded by filing a motion to amend Count II of her complaint by striking the defendants Murphy and Mahoney and substituting the Commonwealth, the DYS, and the Massachusetts Executive Office of Human Services, on October 14, 1980. This motion was assented to by the Office of the Attorney General of the Commonwealth, and was allowed by this court on November 17, 1980. The plaintiff filed her amended complaint on December 23, 1980. The Commonwealth thereafter filed a motion to dismiss Count II of the complaint alleging that the eleventh amendment bars this suit in federal court. Motion of the Defendants to Dismiss Count II of the Complaint, filed February 25, 1981.

The plaintiff, opposing the motion to dismiss, argued that the Commonwealth's assent to the motion to amend constituted a waiver of its eleventh amendment immunity. Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Count II, filed April 3, 1981. We reject the plaintiff's argument on this issue, cf. *Newfield House*

*v. Mass. Dept. of Public Welfare*, 1 Cir. 1981, 651 F.2d 32, 36, n. 3, and hereby adopt the reasons set forth in the Commonwealth's response, filed April 22, 1981.

On April 24, 1981, however, this court issued a procedural order, instructing the parties to address the following issues:

(1) Whether there exists any constitutional or statutory barrier to the exercise of pendent jurisdiction over plaintiff's claim in Count II (with specific reference to the 11th amendment and 42 U.S.C. § 1983)?

(2) Should the 11th amendment present a barrier, has the Commonwealth waived its immunity by virtue of the Tort Claims Act, Mass. G.L. c. 258?

Both parties responded, the plaintiff by filing a memorandum on May 7, 1981, and the Commonwealth by filing its Motion to Certify Issue to the Massachusetts Supreme Judicial Court on May 28, 1981. Upon consideration of the arguments made on behalf of both parties, we have found that the question herein certified will be dispositive of the Commonwealth's Motion to Dismiss Count II. By virtue of this certification, the Commonwealth's Motion to Certify is granted and the plaintiff's argument that this federal court's pendent jurisdiction may abrogate the Commonwealth's eleventh amendment immunity is hereby rejected.

### *Pendent Jurisdiction*

■■■ The doctrine of pendent jurisdiction permits a federal court, in certain circumstances, to adjudicate disputes over which it has no independent basis of jurisdiction. *United Mine Workers v. Gibbs*, 1966, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218, held that a federal court could assume pendent jurisdiction over a non-federal claim if it is associated with a federal claim and it arises from "a common nucleus of operative fact." In

---

office or employment, in the same manner and to the same extent as a private individual under like circumstances ....

3. Mass.Gen.Laws c. 258, § 4.

such a case, "there is *power* in federal courts to hear the whole." *Gibbs, supra* at 725, 86 S.Ct. at 1138. *Gibbs,* however, refers only to a federal court's power to hear "cases and controversies" under Article III, § 2 of the Constitution. There is still a second obstacle to the exercise of pendent jurisdiction, "for the jurisdiction of the federal courts is . . . also [limited] by Acts of Congress." *Owen Equipment & Erection Co. v. Kroger,* 1978, 437 U.S. 365, 372, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274. *A fortiori,* we reject the plaintiff's argument that the exercise of pendent jurisdiction can circumvent the prohibition of the eleventh amendment.[4] The eleventh amendment is a positive restriction of the power of federal courts to hear cases and controversies under Article III of the Constitution. *See Edelman v. Jordan,* 1974, 415 U.S. 651, 685, 94 S.Ct. 1347, 1366–67, 39 L.Ed.2d 662 (Douglas, J., dissenting). However, a state's eleventh amendment immunity from damage claims by citizens can be waived and, if waived, would present no obstacle to the exercise of pendent jurisdiction by this court. *See Edelman, supra; Parden v. Terminal Ry. Co.,* 1964, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233; *Marrapese v. State of Rhode Island,* D.R.I., 1980, 500 F.Supp. 1207, 1212–13.

■ The Commonwealth has argued that whether or not the eleventh amendment prohibits the exercise of pendent jurisdiction, it still cannot be exercised in this case. Count II introduces both a pendent claim and a pendent party, the Commonwealth. Relying on the decision of *Aldinger v. Howard,* 1976, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276, the Commonwealth contends that it cannot be joined as a pendent party because Congress has impliedly negated the existence of jurisdiction over a state in the statute supporting jurisdiction of the federal claim, 42 U.S.C. § 1983, in Count I. We reject this argument, and rule that if the Commonwealth has waived its eleventh amendment immunity, pendent jurisdiction

may be properly exercised over the Commonwealth in this case.

First, the Commonwealth concedes that Count I and Count II both arise out of a "common nucleus of operative fact," and therefore present a single "case" within the meaning of Article III of the Constitution. Memorandum in Support of the Commonwealth's Motion to Dismiss Count II, filed February 25, 1981, at 11. Second, we find that Congress has not negated pendent jurisdiction over the Commonwealth in the statutes supporting plaintiff Irwin's federal claim, 42 U.S.C. § 1983 and 28 U.S.C. § 1331. *Owen Equipment & Erection Co. v. Kroger, supra,* 437 U.S. at 372, 98 S.Ct. at 2401–02; *see Owen v. City of Independence,* 1980, 445 U.S. 622, 645–51, 653 n.37, 100 S.Ct. 1398, 1412–15, 1416–17 n.37, 63 L.Ed.2d 673; *Quern v. Jordan,* 1979, 440 U.S. 332, 351 n.3, 355–57, 99 S.Ct. 1139, 1150 n.3, 1152–53, 59 L.Ed.2d 358 (Brennan, J., concurring); *Monell v. New York Department of Social Services,* 1978, 436 U.S. 658, 689–90 n.53, 98 S.Ct. 2018, 2035 n.53, 56 L.Ed.2d 611; *Fitzpatrick v. Bitzer,* 1976, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614; *Marrapese, supra,* at 1210–12.

### Pendent Party Jurisdiction

*Aldinger, supra,* was the first case in which the Supreme Court addressed the question of pendent *party* jurisdiction after *Gibbs. Aldinger* considered the " 'subtle and complex question with far-reaching implications' [of] whether the doctrine of pendent jurisdiction extends to confer jurisdiction over a party as to whom no independent basis of federal jurisdiction exists." *Id.* 427 U.S. at 2–3, 96 S.Ct. at 2415. The plaintiff in *Aldinger* had been dismissed from her clerical job in a county treasurer's office without being given a hearing, before or after her discharge. She filed her complaint in federal court. Her federal claim was brought against the county treasurer, county commissioners, and the county itself

---

4. The eleventh amendment provides:

   The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

for violation of her fourteenth amendment rights pursuant to 42 U.S.C. § 1983. Her state law claim, for which she asserted pendent jurisdiction, was brought against the county and "was said to rest on state statutes waiving the county's sovereign immunity and providing for vicarious liability arising out of tortious conduct of its officials." *Id.* at 5, 96 S.Ct. at 2416. The claim against the county was dismissed by the District Court since, at that time, a "county" was not suable as a "person" under § 1983, and that it could not exercise pendent jurisdiction over a pendent claim against a pendent, or ancillary, party. *Id.*

*Aldinger* declined to decide whether there were "any 'principled' differences between pendent and ancillary jurisdiction," *id.* at 13, 96 S.Ct. at 2420, but rather the court found that whether jurisdiction extends to a pendent claim or a pendent party depends not only upon whether, under *Gibbs*, the power exists under Article III to hear the claim, but also upon "whether by virtue of the statutory grant of subject matter jurisdiction [over the federal claim] Congress has addressed itself to the *party* as to whom jurisdiction pendent to the principal claim is sought." *Id.* at 16, 96 S.Ct. at 2421.

*Aldinger* then decided that Congress had indeed addressed itself to the pendent party, the county, in the statutes conferring subject matter jurisdiction, 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).[5] Since the court had found that Congress excluded counties from the class of "persons" suable under § 1983 in *Monroe v. Pape*, 1961, 365 U.S. 167, 187–191, 81 S.Ct. 473, 484–486, 5 L.Ed.2d 492, it decided that the claim against the county was not "authorized by law" within the meaning of § 1343 and therefore there could be no pendent jurisdiction over the county. It said that "a fair reading of the language used in § 1343,

together with the scope of § 1983, requires a holding that the joinder of a municipal corporation . . . for the purposes of asserting a state-law claim not within federal diversity jurisdiction, is without the statutory jurisdiction of the district court." *Id.* 427 U.S. at 17, 96 S.Ct. at 2421.

Though we do not question the validity of the basic holding of *Aldinger* that

[b]efore it can be concluded that [pendent party] jurisdiction exists, a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence,

*id.* at 18, 96 S.Ct. at 2422, *see Owen Equipment and Erection Co., supra,* 437 U.S. at 372–73 n. 12, 98 S.Ct. at 2402 n. 12, we find that subsequent Supreme Court decisions on the scope of § 1983 liability eradicate whatever support *Aldinger* may give to the Commonwealth's claim that pendent party jurisdiction cannot join the Commonwealth to a federal claim brought under § 1983. *Monell, supra,* overruled *Monroe* by holding that municipalities were "persons" for purposes of § 1983. There is no longer any basis, therefore, for *Aldinger's* conclusion that Congress had impliedly excluded counties from federal jurisdiction in § 1343. The plaintiff Irwin, however, seeks to assert pendent jurisdiction over the Commonwealth itself rather than one of its municipal subdivisions and asserts jurisdiction on the basis of § 1331 rather than § 1343. We are therefore confronted with the question of whether Congress intended to negate the existence of pendent party jurisdiction over a state when the federal claim is based upon 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

The *Aldinger* Court attributed great weight to *Monroe's* exclusion of municipalities from § 1983 liability, even though it

5. Section 1343(3), now § 1343(a)(3), provides as follows:

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \* \*

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, or any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

purported to construe the purely jurisdictional civil rights statute, § 1343. *Aldinger* found that § 1343 impliedly negated the existence of pendent party jurisdiction over municipalities by *reference* to § 1983. *Id.* 427 U.S. at 17, 96 S.Ct. at 2421. Though the plaintiff Irwin has invoked § 1983 in Count I, she has alleged jurisdiction on the basis of § 1331 rather than § 1343. Thus, for *Aldinger* to preclude the exercise of pendent party jurisdiction in this case, we would have to assume not only that states are not "persons" for purposes of § 1983, but also that the scope of § 1331 jurisdiction is limited by *reference* to § 1983. *Aldinger* justified limiting § 1343 by reference to § 1983 on the basis that § 1343 itself refers to § 1983. *Id.* at 16, 96 S.Ct. at 2421. There is no similar or parallel reference to § 1983 in § 1331. To the contrary, in *Lynch v. Household Finance Corp.*, 1972, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424, the Court examined the legislative history of § 1331, found that it was enacted amidst a trend of expansion of federal jurisdiction, and postdates the enactment of § 1343.

The 1875 Act [predecessor of § 1331] giving the federal courts power to hear suits arising under Art. III, § 2 of the Constitution was, like the Act of 1871 [§§ 1983 and 1343], an expansion of national authority over matters that, before the Civil War, had been left to the States. The Act, therefore, is "clearly ... part of, rather than an exception to, the trend of legislation which preceded it." [Citations omitted.]

*Id.* at 548, 92 S.Ct. at 1120. By rejecting the argument that § 1331 restricted the scope of the previously enacted § 1343,[6] *Lynch* leaves no substance to an argument that § 1343 or § 1983 could restrict the scope of the *subsequently* enacted § 1331.

A year after *Lynch*, but before *Monell*, the Supreme Court considered whether § 1343 conferred jurisdiction on a federal court to hear a § 1983 claim for equitable relief against a city in *City of Kenosha v. Bruno*, 1973, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109. The Court said that § 1343 jurisdiction was controlled by the holding in *Monroe* that a city is not a person. *City of Kenosha, supra*, at 511–13, 93 S.Ct. at 2225–26. However, the Court remanded the case to determine whether § 1331 supported jurisdiction over the municipal defendants. *Id.* at 513–14, 93 S.Ct. at 2226–27. Apparently the Court did not consider § 1331 jurisdiction to be restricted by the scope of §§ 1983 or 1343. Indeed, after *City of Kenosha*, the Ninth Circuit Court of Appeals has held that "[t]he 'person' requirements of § 1983 do not apply to § 1331 ...." *Gray v. Union County Intermediate Education District*, 9 Cir., 1975, 520 F.2d 803, 805; see *Croy v. Skinner*, D.Ga., 1976, 410 F.Supp. 117.

Furthermore, we note that recent amendments to § 1331 have expanded federal question jurisdiction by eliminating the amount in controversy requirement. First, in 1976, Congress eliminated the $10,000 jurisdictional amount where an action was brought against the United States, any of its agencies, or any of its officers or employees in their official capacities. Act of October 21, 1976, Pub.L. 94–574, § 2, 90 Stat. 2721. In 1980, however, Congress eliminated the amount in controversy requirement altogether for "civil actions arising under the Constitution, laws, or treaties of the United States." Act of December 1, 1980, Pub.L. 96–486, § 2(a), 94 Stat. 2369. Section 4 of the 1980 Act provides that it "shall apply to any civil action pending on the date of enactment of this Act [Dec. 1, 1980]." The expansive scope of § 1331 is indicated in the House Report, which explains that the 1980 amendment "represents sound principles of federalism by mandating that the Federal courts should bear the responsibility of deciding all questions of Federal law." H.R.Rep.No.1461 at 1, [1980] U.S.Code Cong. & Ad.News at 5063.

---

6. *Lynch, supra,* at 548 n. 14, 92 S.Ct. at 1120 n.14, suggests that the dearth of congressional debate over the enactment of § 1331 was occasioned by the likelihood that it was "sneak" legislation. "Nonetheless, the passage of the Act, despite the lack of debate, has been regarded as the 'culmination of a movement ... to strengthen the Federal Government against the states.'" [Citation omitted.]

We find, accordingly, that §§ 1983 and 1343 do not "by reference" restrict the scope of § 1331, and that the exercise of pendent party jurisdiction under § 1331 is not thereby negated by implication.[7]

### Commonwealth's XI Amendment Immunity

Even if the scope of § 1331 could be restricted by reference to § 1983, we find that Congress intended to include states within the scope of § 1983 defendants to the extent consistent with their eleventh amendment immunity. Thus § 1983 does not impliedly negate pendent party jurisdiction over the Commonwealth whether jurisdiction is based on § 1343 or § 1331. We are persuaded by Judge Pettine's analysis in *Marrapese* that Congress intended to *allow* states to waive their eleventh amendment immunity by consenting to liability under § 1983. In our view, a contrary interpretation of § 1983 is incompatible with its broad remedial purposes.

*Marrapese* is supported by the Supreme Court's recent opinion of *Owen v. City of Independence, supra.* *Monell* had found that municipalities were "persons" subject to liability under § 1983, but had left undecided the question of whether Congress intended to abrogate completely the municipalities' sovereign immunity. The Court had already determined that Congress had the power to abrogate the states' eleventh amendment and sovereign immunity under § 5 of the fourteenth amendment in *Fitzpatrick v. Bitzer, supra,* 427 U.S. at 456, 96 S.Ct. at 2671.[8] Though municipalities are not considered part of the state for eleventh amendment purposes,[9] *Owen* decided that § 1983 had abrogated municipal sovereign immunity. *Owen, supra,* 445 U.S. at 638–44, 100 S.Ct. at 1409–12.

*Owen* began its analysis by confirming the broad scope of "persons" Congress intended to subject to § 1983 liability. *Id.* at 635–36, 100 S.Ct. at 1407–08. It explained that "[w]here the immunity claimed by the defendant was well established at common law at the time § 1983 was enacted, and where its rationale was compatible with the purposes of the Civil Rights Act, we have construed the statute to incorporate that immunity." *Id.* at 638, 100 S.Ct. at 1409. *Owen* then rejected the incorporation of municipal immunity, finding that its rationale conflicted with the purposes of § 1983. *Id.* at 644–650, 100 S.Ct. at 1412–15. Questioning the usefulness of governmental immunity, *Owen* states "[h]ow 'uniquely amiss' it would be, therefore, if the government itself—'the social organ to which all in our society look for the promotion of liberty, justice, fair and equal treatment, and the setting of worthy norms and goals for social conduct'—were permitted to disavow liability for the injury it has begotten." *Id.* at 651, 100 S.Ct. at 1415.

*Owen's* narrow view of sovereign immunity is consistent with Judge Pettine's analysis of *Quern v. Jordan,* 1979, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358. *Quern* reaffirmed the Court's position in *Edelman, supra,* that Congress did not intend to abrogate the states' eleventh amendment immunity through § 1983. *Quern, supra,* at 345,

---

7. *Aldinger* expressly declined to decide whether pendent party jurisdiction could be supported under § 1331. "[N]either the District Court nor the Court of Appeals reached the question whether the complaint stated a cause of action over which § 1331 jurisdiction would lie. Petitioner did not raise the question in her petition for certiorari, and it is therefore not before us." *Id.* 427 U.S. at 4 n.3, 96 S.Ct. at 2415–16 n.3. At least one Court of Appeals has found that § 1331 supports the exercise of pendent party jurisdiction since *Aldinger. State of North Dakota v. Merchants National Bank & Trust Co.,* 8 Cir., 1980, 634 F.2d 368, 370–74.

8. Though *Fitzpatrick* had found that since "[section] 1983 had been held in *Monroe v. Pape* to exclude cities and other municipal corporations from its ambit; that being the case, it could not have been intended to include states as parties defendant." *Id.* at 452, 96 S.Ct. at 2669. *Monell,* however, has undercut *Fitzpatrick's* premise.

9. A municipality "does not occupy the same position as a state for purposes of the Eleventh Amendment." *Edelman, supra,* at 667 n. 12, 94 S.Ct. at 1358 n. 12. *See Moor v. County of Alameda,* 1973, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596; *Monell, supra,* 436 U.S. at 690 n. 54, 98 S.Ct. at 2035 n. 54.

99 S.Ct. at 1147; *Edelman, supra*, 415 U.S. at 677, 94 S.Ct. at 1362; *see Ginter v. State Bar of Nevada*, 9 Cir., 1980, 625 F.2d 829.

> *Quern* ... conspicuously avoided any statement that the term "person" did not include "state." Stated precisely, *Quern* concluded only that the Congress which enacted § 1983 did not intend to *force* the states to answer in federal court for their constitutional violations. Of itself, this holding does not mandate the further conclusion that the 42d Congress did not intend to *allow* the states to answer in federal court for their constitutional violations if they consented to do so.

*Marrapese, supra*, at 1211. There is no inconsistency between the holdings of *Quern* and *Edelman*, that § 1983 incorporates the states' eleventh amendment immunity, and finding the state amenable to suit under § 1983 with its consent. *See Gay Student Services v. Texas A & M University*, 5 Cir., 1980, 612 F.2d 160 (finding that a university may be a "person" for purposes of § 1983, but may still be immune under the eleventh amendment.) If a state has waived its eleventh amendment immunity, it is suable as a "person" under § 1983.[10] Accordingly, § 1983 does not impliedly negate the existence of a pendent party jurisdiction over the Commonwealth if the Commonwealth has waived its eleventh amendment immunity with respect to Count II of plaintiff Irwin's complaint. *See FDIC v. Otero*, 1 Cir., 1979, 598 F.2d 627, 631; *Bowers v. Moreno*, 1 Cir., 1975, 520 F.2d 843.

■■■■ We finally apply the principle that pendent jurisdiction is within our discretion to withhold. *Ortiz v. United States Government*, 1 Cir., 1979, 595 F.2d 65, 71; *Roxse Homes, Inc. v. Adams*, D.Mass., 1979,

83 F.R.D. 398, 402 n. 13. We find, absent the eleventh amendment limitations, that prudential factors weigh more heavily in favor than against the exercise of pendent jurisdiction. First, a trial in both federal and state courts poses the danger of conflicting outcomes, since liability on both the federal and state claims depends primarily on the establishment of common facts. Further there is a federal interest in the state law claim since the Commonwealth's obligation to provide the plaintiff necessary medical services arises primarily through the eighth and fourteenth amendments. The question of negligence in the provision of constitutionally mandated services is more suited than most pendent claims for adjudication in federal court. Second, consolidation of the primary and pendent claims is likely to reduce the commitment of judicial resources to the resolution of this dispute. Third, the real party in interest in both Counts I and II is the Commonwealth of Massachusetts.

### Ambiguity in Mass. G.L. c. 258

Whether or not the Commonwealth has waived its eleventh amendment immunity by virtue of Mass. G.L. c. 258 is therefore dispositive of the Commonwealth's Motion to Dismiss Count II. This question, however, involves a mixture of state and federal law. "On the one hand, interpretation of a state statute is prima facie an issue of state law. On the other hand, innumerable cases agree that the evaluation of words or conduct alleged to constitute a waiver of constitutional rights is always a federal question." *Marrapese, supra*, at 1213 n. 13. *Marrapese* found it unnecessary to address

---

10. *Marrapese* indicates that *Quern* was decided amidst considerable speculation over whether states were "persons" for purposes of § 1983 after *Monell*. Its interpretation of *Quern* was influenced by Justice Rhenquist's avoidance of finding that a state was not a "person." *Marrapese, supra*, at 1210–11. We have found one district court opinion since *Marrapese* that interprets *Quern* to hold that "states" are not "persons." *Holladay v. State of Montana*, D.Mont., 1981, 506 F.Supp. 1317, 1321.

Though *Quern* finds that § 1983 does not abrogate the states' eleventh amendment immunity, a state should not be precluded from the ability to consent to § 1983 liability by an unnecessarily narrow construction of § 1983. "[W]here constitutional rights are at stake the courts are properly astute, in construing statutes, to avoid the conclusion that Congress intended to use the privilege of immunity ... in order to defeat them." P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart and Wechsler's The Federal Courts and the Federal System 336 (2d ed. 1973) *quoted in Owen, supra*, 445 U.S. at 650 n. 32, 100 S.Ct. at 1415 n. 32.

the state law issue in its evaluation of whether Rhode Island had waived its eleventh amendment immunity through its tort claims statute, R.I. G.L. § 9–31–1, since the statute unambiguously consented to tort suits, without jurisdictional restriction. Thus, the question of evaluating the sufficiency of the language of the statute to constitute a waiver of a constitutional right under federal law did not require an interpretation of the statute in the light of the legislative intent and in the context of other state statutes.

■■■ However, whether a state statute constitutes a waiver of its eleventh amendment rights may in some cases hinge entirely on the meaning of ambiguous terms and therefore requires interpretation by the state court in light of the legislative intent. In such a case, the question of waiver may thereby be determined by an issue of state law appropriately decided by the state's highest court. *Parden v. Terminal R. Co.,* 1964, 377 U.S. 184, 194–95, 84 S.Ct. 1207, 1214, 12 L.Ed.2d 233; *Ford Motor Company v. Department of Treasury,* 1945, 323 U.S. 459, 465–66 & n. 8, 65 S.Ct. 347, 351–52 & n. 8, 89 L.Ed. 389. We believe this is such a case.

On the one hand, Mass. G.L. c. 258, § 2, states that "Public employers shall be liable . . . ," and on the other, § 3 states that "[t]he superior court shall have jurisdiction of all civil actions brought against a public employer." Is c. 258's grant of jurisdiction to the superior court of *all* civil actions brought against a public employer "exclusive", *Marrapese, supra,* at 1218, n. 24, in the sense that the Commonwealth's sovereign immunity has been waived only for purposes of certain tort claims in state courts and not in federal courts? The inclusion of the jurisdictional provision in the Massachusetts law makes the question of the extent of the Commonwealth's waiver ambiguous, and therefore we certify this question to the Supreme Judicial Court.