WENDY SUSAN IRWIN vs. COMMISSIONER OF THE DEPARTMENT
OF YOUTH SERVICES & others.[1]

Suffolk.   December 9, 1982. — April 15, 1983.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Statute,* Construction.  *Governmental Immunity.  Commonwealth,* Suit
against Commonwealth in Federal court.

General Laws c. 258, as revised by St. 1978, c. 512, § 15, does not con-
stitute a waiver by the Commonwealth of its right under the Eleventh
Amendment to the United States Constitution not to be sued in Federal
courts.  [816-821]

QUESTION OF LAW certified to the Supreme Judicial Court
by the United States District Court for the District of Massa-
chusetts.

*Roberta Thomas Brown,* Assistant Attorney General
(*Elizabeth E. Laing,* Assistant Attorney General, with her)
for the Commonwealth.

*Neil Sugarman* (*Margaret A. O'Reilly* with him) for the
plaintiff.

LYNCH, J.   In this case the court considers a question of
the construction of G. L. c. 258, as appearing in St. 1978,
c. 512, § 15.[2]   The matter was certified to us by the United
States District Court for the District of Massachusetts, pur-

---

[1] Commonwealth of Massachusetts, Department of Youth Services, Ex-
ecutive Office of Human Services, and seven members of the staff of the
Department of Youth Service facility.

[2] The 1978 statute, entitled "An Act establishing a claims and indemnity
procedure for the commonwealth, its municipalities, counties and dis-
tricts and the officers and employees thereof," imposes liability on public
employers for certain tortious acts of their employees.  The former G. L.
c. 258, "Claims Against the Commonwealth," which was struck by
St. 1978, c. 512, § 15, did not provide for tort liability.

suant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981), as a result of certain pretrial proceedings in an action now pending in that court. *Irwin* v. *Calhoun*, 522 F. Supp. 576 (D. Mass. 1981). The first count of the plaintiff's complaint alleged a violation of 42 U.S.C. § 1983 (1976 & 1980 Supp.) through a deprivation of her constitutional rights by individual employees of the Department of Youth Services (department). The second count of the complaint, brought under G. L. c. 258, alleged that the Commonwealth, the department, and the Executive Office of Human Services had negligently failed to provide the plaintiff with reasonable medical services while she was in the custody of the department. The Commonwealth moved to dismiss the negligence claim on the ground that the Eleventh Amendment to the United States Constitution bars any action in Federal courts against the Commonwealth. The judge then requested the parties to address, inter alia, whether the Commonwealth has waived its constitutional immunity from suit in Federal courts by enacting G. L. c. 258. On motion of the Commonwealth, the judge certified the following question to this court: "Does Massachusetts General Laws Chapter 258 by its terms, either expressly or impliedly, indicate the Commonwealth's consent to suit by citizens in federal as well as state courts, thereby waiving its eleventh amendment immunity?" We answer that it does not.

1. *Eleventh Amendment immunity.* Briefly stated, the Eleventh Amendment to the United States Constitution, submitted to the Legislatures of the several States in 1794 and ratified by the requisite three-fourths of the States by 1798, was a measure to protect State treasuries from the power of the Federal judiciary.[3] While by its terms the amendment bars only *suits against a State by citizens of a sister State or of a foreign State,* the United States Supreme

---

[3] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well." *Edelman* v. *Jordan*, 415 U.S. 651, 662-663 (1974), and cases cited. The general rule, affirmed in *Edelman*, is that the Eleventh Amendment bars suit in Federal courts by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Id.* at 663. A State may consent to be sued in its own courts, as Massachusetts has by statute, but a waiver of its Eleventh Amendment immunity from suit in Federal courts will not readily be inferred. See *Edelman* v. *Jordan*, *supra* at 673, quoting *Murray* v. *Wilson Distilling Co.*, 213 U.S. 151, 171 (1909) (waiver will be found only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction"); *Petty* v. *Tennessee-Missouri Bridge Comm'n*, 359 U.S. 275, 276 (1959), citing *Chandler* v. *Dix*, 194 U.S. 590, 591-592 (1904) ("Nor will a waiver of immunity from suit in state courts do service for a waiver of immunity where the litigation is brought in the federal court"); *Ford Motor Co.* v. *Department of Treasury of Ind.*, 323 U.S. 459, 465 (1945), quoting *Great N. Ins. Co.* v. *Read*, 322 U.S. 47, 54 (1944) ("When a state authorizes a suit against itself to do justice to taxpayers who deem themselves injured by any exaction, it is not consonant with our dual system for the federal courts to be astute to read the consent to embrace federal as well as state courts"); *Massachusetts Hosp. Ass'n* v. *Harris*, 500 F. Supp. 1270, 1278 (D. Mass. 1980) ("it is well settled that in the absence of a clear declaration of consent to suit in federal court, a state's consent to actions in its own courts will not be held to abrogate its Eleventh Amendment immunity"); *Skehan* v. *Trustees of Bloomsburg*, 669 F.2d 142, 148-149 (3d Cir. 1982) ("This rule of clear and express waiver has been consistently applied in cases in which a state has consented to suit in its own courts by statute; absent a clear declaration of a state's consent to a similar suit against itself in federal court, such

consent has not been inferred").[4]   The Federal District
Court has determined that, in this case, the question of
waiver "hinge[s] entirely on the meaning of ambiguous
terms [in G. L. c. 258] and therefore requires interpretation
by the state court in light of the legislative intent. In such a
case, the question of waiver may thereby be determined by
an issue of state law appropriately decided by the state's
highest court." *Irwin* v. *Calhoun*, 522 F. Supp. 576, 585
(D. Mass. 1981), citing *Parden* v. *Terminal Ry. of the Ala.
Docks Dep't*, 377 U.S. 184, 194-195 (1964), and *Ford Motor
Co.* v. *Department of Treasury of Ind.*, *supra* at 465-466.
See and compare *Marrapese* v. *Rhode Island*, 500 F. Supp.
1207, 1213 n.13 (D. R.I. 1980). We undertake to answer
the question certified to us on that narrow basis alone.

2. *Claims against the Commonwealth, 1879-1973.* At
the time St. 1978, c. 512, § 15, was enacted, the Common-
wealth's common law sovereign immunity had been abro-
gated for nearly one century as to certain claims. Statute
1879, c. 255, § 1, provided: "The superior court shall have
jurisdiction of all claims against the Commonwealth, which
are founded on contract for the payment of money, or
which may have arisen under . . . [former statutory provi-
sions relating to the management of railroads, see *McArthur
Bros.* v. *Commonwealth*, 197 Mass. 137, 138 (1908)], and
petitions setting forth such claims may be brought before
said court sitting for the county of Suffolk, and shall be
returnable on the return day of any regular term thereof."
See Pub. Sts. c. 195, § 1 (1882) (retaining the jurisdictional
provision and deleting reference to former railroad manage-
ment provisions).   Following close upon our decisions re-

---

[4] The question certified to this court does not require that we address
any aspect of the issue of relief sought under 42 U.S.C. § 1983 (1978).  See
*Quern* v. *Jordan*, 440 U.S. 332, 344-345 n.16 (1979); *Woodbridge* v.
*Worcester State Hosp.*, 384 Mass. 38, 44 n.7 (1981).   Nor do we address
the effect of the type of relief sought on the question of waiver.  See
*Edelman* v. *Jordan*, *supra* at 677.  See also *Florida Dep't of Health &
Rehabilitative Servs.* v. *Florida Nursing Home Ass'n*, 450 U.S. 147 (1981).

jecting a contract claim not founded on the payment of money, *Wesson* v. *Commonwealth,* 144 Mass. 60 (1887), and holding that the statute did not permit recovery to reimburse a town for certain expenditures, *Milford* v. *Commonwealth,* 144 Mass. 64 (1887), the Legislature amended Pub. Sts. c. 195, § 1 (1882), as follows: "The superior court shall have jurisdiction of all claims against the Commonwealth, whether at law or in equity . . . and all claims shall be subject to the same set off and recoupment as they would be if the Commonwealth was a private person . . . ." St. 1887, c. 246. We construed this amendment as demonstrating a legislative intent "to extend the jurisdiction of the courts to claims which had not been included in the previous statute, such as those which had been considered in [*Wesson, supra, Milford, supra*], but not necessarily to claims of a different and distinct character." *Murdock Parlor Grate Co.* v. *Commonwealth,* 152 Mass. 28, 30 (1890). We held that Pub. Sts. c. 195 (1882), as amended, did not mean to extend the jurisdiction of the Superior Court to include tort claims against the Commonwealth, but rather "to provide a convenient tribunal for the determination of claims of the character which civilized governments have always recognized." *Id.* at 31-33. See *Nash* v. *Commonwealth,* 174 Mass. 335, 338 (1899); *McArthur Bros.* v. *Commonwealth,* 197 Mass. 137, 138-139 (1908); *Burroughs* v. *Commonwealth,* 224 Mass. 28, 29 (1916); *Glickman,* v. *Commonwealth,* 244 Mass. 148, 150 (1923).

Public Statutes c. 195 (1882) was recodified in 1902 as R. L. c. 201 and in 1921 as G. L. c. 258. The statute was amended several times between 1887 and 1978. Each version, however, retained a provision conferring jurisdiction of claims, with exceptions not here material, on the Superior Court.[5] In a 1908 decision, reviewing the then

---

[5] See R. L. c. 201, §§ 1 and 2 (1902) ("The superior court for the county of Suffolk shall have jurisdiction of all claims at law or in equity against the commonwealth. . . . [T]he case shall be tried by the court without a jury and, if the amount claimed is more than one thousand dollars, by three justices of said court. All hearings shall be in open court and ques-

twenty-nine-year history of the statute, the court stated: "It is first to be noted that the Superior Court alone is given original jurisdiction. This has been the tribunal designated in all the statutes, although until St. 1905, c. 263, other litigants having claims in contract or replevin of more than $1,000, or within Suffolk County of more than $4,000, had the option of bringing their litigation either in the Supreme Judicial Court or the Superior Court, and in most matters in equity there is now concurrent jurisdiction. While many statutes have conferred exclusive jurisdiction upon the Supreme Judicial Court, this one constitutes the Superior Court, which is the great trial court of the Commonwealth, the exclusive tribunal for trials of this class of causes." *McArthur Bros.* v. *Commonwealth,* 197 Mass. 137, 139 (1908).

Five years before the major revision of G. L. c. 258, the Legislature amended §§ 1 and 2 through St. 1973, c. 1114, §§ 337 and 339. Section 1, as amended, provided: "The superior court, except as otherwise expressly provided, shall have jurisdiction of all claims against the commonwealth." Section 2, as amended, provided: "The laws relative to tender, offer of judgment and counterclaim shall apply to the said action, and the case shall be tried by the court without a jury. All hearings shall be in open court, except that on motion by the attorney general or the plaintiff a master may be appointed, and questions of law may be taken to the supreme judicial court, as in other cases. If the amount claimed exceeds two thousand dollars, the action shall be brought in Suffolk county, otherwise in Suffolk

tions of law may be taken to the supreme judicial court as in other cases"); St. 1905, c. 370, § 1 and St. 1908, c. 288 (deleting in § 1 the words "for the county of Suffolk" and establishing in § 2 jurisdiction in Suffolk County and jurisdiction of a three-justice panel for certain claims exceeding certain amounts); St. 1909, c. 204, § 1 (providing for the appointment of an auditor or master); St. 1910, c. 555, § 3, and c. 645 (repealing R. L. c. 201, § 2 [1902], and enacting a substantially similar section); G. L. (Ter. Ed.) c. 258, § 1 ("The Superior Court, except as otherwise expressly provided, shall have jurisdiction of all claims at law or in equity against the commonwealth").

county or in the county where the plaintiff resides. If the action is to recover damages for injuries sustained while traveling on a state highway, it may be brought in Suffolk county or in the county where the plaintiff resides or where the injuries were sustained." In the same year, we reiterated that G. L. c. 258 did not authorize tort claims against the Commonwealth. *Morash & Sons* v. *Commonwealth*, 363 Mass. 612, 614-616 (1973).

3. *The Tort Claims Act.* By St. 1978, c. 512, § 15, the Legislature struck the former G. L. c. 258, and inserted the present, commonly known as the Tort Claims Act.[6] This legislative action followed two significant decisions of this court. In *Morash & Sons* v. *Commonwealth*, 363 Mass. 612, 619-624 (1973), we expressed our view that the judicially created doctrine of governmental immunity from tort liability was "logically indefensible," but we declined then to abolish it ourselves as we deemed "the comprehensive approach available to the Legislature [to be] the preferable course." See also *Hannigan* v. *New Gamma-Delta Chapter of Kappa Sigma Fraternity, Inc.*, 367 Mass. 658, 662 (1975). Four years after the *Morash* decision, when the case of *Whitney* v. *Worcester*, 373 Mass. 208 (1977), came before us, the Legislature had not yet acted. Therefore, we announced in the *Whitney* decision our intention to abrogate the doctrine, retroactively to the date of our decision in *Morash*, should the Legislature fail to act by the conclusion of its 1978 session. *Id.* at 210. Statute 1978,

---

[6] General Laws c. 258, § 2, now provides in part: "Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances . . . ."

Section 3 provides: "All civil actions brought against a public employer . . . shall be brought in the county where the claimant resides or in the county where such public employer is situated, except that in the case of the commonwealth such civil actions shall be brought in the county where the claimant resides or in Suffolk county. The superior court shall have jurisdiction of all civil actions brought against a public employer."

c. 512, § 15, was passed within one year of our decision in *Whitney,* and was made retroactive by § 16, to apply to all causes of action arising on or after the date of the *Whitney* decision.

We think the conclusion is unmistakable that the Legislature, in enacting the Tort Claims Act, was responding to our *Morash* and *Whitney* decisions, and was not undertaking otherwise a substantive revision of G. L. c. 258.[7]  See *Murdock Parlor Grate Co.* v. *Commonwealth,* 152 Mass. 28, 30 (1890) ("In view of the fact that the statute [St. 1887, c. 246] was passed shortly after [our] decisions . . . it is reasonable to infer that its object was to extend the jurisdiction of the courts to claims . . . such as those which had been considered in [those decisions]"); *Nash* v. *Commonwealth,* 174 Mass. 335, 338 (1899) ("Shortly after these decisions, and, it reasonably may be inferred, in consequence of them, St. 1887, c. 246, was passed. . . .  While the language of this statute is full and comprehensive, it is not to be interpreted as imposing any new obligation upon the Commonwealth, or as creating a new class of claims for which a sovereignty never has been held responsible"); *Arthur A. Johnson Corp.* v. *Commonwealth,* 306 Mass. 347, 350 (1940) ("The following year [1909] [R. L. c. 201] was amended . . . .  It may be inferred that the purpose of the Legislature in enacting this amendment was to meet the difficulty presented by [our] decision").  As did each of its predecessors, St. 1978, c. 512, § 15, contains a provision expressly conferring jurisdiction

---

[7] This conclusion is strengthened by the words of St. 1978, c. 512, § 18, as amended by St. 1979, c. 1, § 2: "The provisions of this act shall be construed liberally for the accomplishment of the purposes thereof but shall not be construed to supersede or repeal section eighteen of chapter eighty-one [liability for defects in State highways] and sections fifteen to twenty-five, inclusive, of chapter eighty-four [damages for defects in ways] of the General Laws.  Any other provision of law inconsistent with any other provisions of this chapter shall not apply.  Nothing contained in this chapter shall be construed as limiting or restricting any liability with respect to claims not arising in tort to which the commonwealth may have been subject prior to the effective date of this chapter or to which the commonwealth would thereafter have been subject if this chapter had not been adopted."

on the Superior Court of "[a]ll civil actions" arising under the act.[8]  Seventy-five years have passed since we termed the jurisdiction of the Superior Court "exclusive" under the act.  *McArthur Bros.* v. *Commonwealth,* 197 Mass. 137, 139 (1908).  There, Justice Rugg also observed:  "The statute taken as a whole indicates an intent on the part of the Legislature to create a special tribunal composed of trained and experienced judicial servants, sitting, when large amounts are involved, in the capital of the State, to deal with this peculiarly important class of claims, which is not comprehended within any general classification of actions, under an unusual form of procedure."  *Id.* at 141. See *Putnam Furniture Bldg., Inc.* v. *Commonwealth,* 323 Mass. 179, 186 (1948).  We have found no hint in any subsequent amendments of the statute, including St. 1978, c. 512, § 15, that the Legislature had deemed incorrect our interpretation that the jurisdiction conferred upon the Superior Court is exclusive.  Compare *Marrapese* v. *Rhode Island,* 500 F. Supp. 1207 (D.R.I. 1980) (Legislature took no action for five years following United States District Court's first opinion that the State statute contemplated suit in Federal courts).  Nor do we find in the present statute a clear intention on the part of the Legislature to depart from, alter, or expand the grant of jurisdiction to the Superior Court which has characterized each of the earlier versions of the law.[9]  See *McArthur Bros.* v. *Commonwealth, supra*

---

[8] Statute 1978, c. 512, § 15, deleted the former language "except as otherwise expressly provided" of G. L. c. 258, § 1, as appearing in St. 1973, c. 1114, § 337.  We view the deletion of this modifying language as demonstrative of the Legislature's intent that the Superior Court should have jurisdiction of all tort claims, without exception, arising under c. 258.

[9] We note that in 1978 the Legislature considered four versions of the Tort Claims Act.  Compare 1978 House Doc. No. 1394, § 6 ("Claimant may bring suit in superior court six months after the presentation date. . . . Unless a plaintiff, at the claim date, resides in a state that allows recovery similar to that under this act, a federal or state court may not award him damages") with 1978 Senate Doc. Nos. 683, § 17, 1528, § 17, and 1647, § 15 (language identical to present G. L. c. 258, § 3).  See also earlier drafts in 1974 House Doc. Nos. 2964, § 3, 5076, § 3, 5087, § 3, and

("The argument is much stronger for giving to these words [of R. L. c. 201] a strict and accurate construction in a statute, by which the Commonwealth is suffering itself to be brought to the bar of its own courts at the instance of everybody who has a claim against it, and stating in distinct but limited terms the conditions upon which it may be impleaded"); *Arthur A. Johnson Corp.* v. *Commonwealth,* 306 Mass. 347, 353 (1940), quoting *Main* v. *County of Plymouth,* 223 Mass. 66, 69 (1916) ("It is a familiar principle of statutory construction that mere verbal changes in the revision of a statute do not alter its meaning and are construed as a continuation of the previous law"). See also G. L. c. 212, § 3, as amended by St. 1973, c. 1114, § 51 (conferring on the Superior Court exclusive original jurisdiction of claims against the Commonwealth); J.R. Nolan, Civil Practice § 90 (1975).

Applying our rules governing statutory waiver of governmental immunity, we find in the terms of G. L. c. 258, neither an express nor a necessarily implicit consent by the Commonwealth to suit in Federal courts. See *Woodbridge* v. *Worcester State Hosp.,* 384 Mass. 38, 42 (1981); *Smith* v. *Commonwealth,* 347 Mass. 453, 455-456 (1964). Where, as here, the Commonwealth consents to suit in its own courts, "it can be impleaded only in the manner and to the extent expressed . . . [by] statute." *Broadhurst* v. *Director of the Div. of Employment Sec.,* 373 Mass. 720, 722 (1977), quoting *General Elec. Co.* v. *Commonwealth,* 329 Mass. 661, 664 (1953). See *Oliver Am. Trading Co.* v. *Government of the U.S. of Mex.,* 5 F.2d 659, 662 (2d Cir. 1924), citing *McArthur Bros.* v. *Commonwealth, supra.* We think that the Legislature's failure to include the term "exclusive jurisdiction" of the Superior Court in G. L. c. 258, § 3, is

1977 House Doc. No. 671 (providing for suit in the District Courts or in the Superior Court); 1974 House Doc. No. 5090, § 1; 1977 House Doc. No. 1658, § 1; 1977 Senate Doc. Nos. 675, 1878, 1927 (providing for suit "in any court"); 1975 Draft Act, Fiftieth Report of the Judicial Council, Pub. Doc. No. 144, at 134 (1975) (providing in § 2 for suit in Superior Court).

insufficient basis to infer therefrom its consent to suit in Federal courts, particularly as such consent is not lightly to be inferred. See *Petty* v. *Tennessee-Missouri Bridge Comm'n,* 359 U.S. 275, 276 (1959), citing *Murray* v. *Wilson Distilling Co.,* 213 U.S. 151, 171 (1909). See also *Massachusetts Hosp. Ass'n* v. *Harris,* 500 F. Supp. 1270, 1278 (D. Mass. 1980) ("[G. L. c. 258], § 12 provides that '[c]laims against the commonwealth, except as otherwise expressly provided in this chapter or by any general or special provision of law, may be enforced *in the superior court.*' In the face of its clear statement directing claims to the Massachusetts superior court, we cannot find a consent to suit against DPW in federal court"); *Jacobs* v. *College of William & Mary,* 495 F. Supp. 183, 190 (E.D. Va. 1980), aff'd, 661 F.2d 922 (4th Cir.), cert. denied, 454 U.S. 1033 (1981) (Virginia statute authorizing claims against the Commonwealth in "an appropriate circuit court" did not evince "a clear legislative intent" to consent to be sued in Federal courts); *Riggle* v. *California,* 577 F.2d 579, 585-586 (9th Cir. 1978) (venue statute of State Tort Claims Act showed consent to suit applied only to State courts).

The District Court judge found an ambiguity in reading § 3, the jurisdictional provision of G. L. c. 258, with § 2, the section describing liability of public employers and providing in part: "Public employers shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . . ." The judge concluded that "[t]he inclusion of the jurisdictional provision in the Massachusetts law makes the question of the extent of the Commonwealth's waiver ambiguous . . . ." *Irwin* v. *Calhoun,* 522 F. Supp. 576, 585 (D. Mass. 1981). We think that the clear language of the jurisdictional provision, specifying venue procedures in detail and denominating the Superior Court as the forum for all claims, is not modified by the language of § 2, which provides liability "in the same manner and to the same extent as a private individual under like circumstances." Section 2 describes the nature of a public employer's liability and the limitations of recovery

therefor. It precludes a levy of execution on real and personal property, interest prior to judgment and punitive damages, and fixes a maximum amount of recovery. It provides an exclusive remedy and sets standards for public employees relating to the defense of a claim arising under the act. The provision as a whole defines the extent of liability and recovery under the act, and the language "[p]ublic employers shall be liable . . . in the same manner and to the same extent as a private individual," is a natural and logical term descriptive of the limits of liability. Section 3, on the other hand, simply and straightforwardly directs where a public employer shall be compelled to defend himself. Its language is clear, unequivocal, and, we think, controlling of the question of the limit of the Commonwealth's consent to suit. Compare *Marrapese* v. *Rhode Island,* 500 F. Supp. 1207, 1216, 1217 (D.R.I. 1980) (language of statute, providing liability "in all actions of tort in the same manner as a private individual or corporation," and including no directions as to procedure and venue, was "sweeping" and "extraordinarily liberal in comparison to then existing law in most states"); *Kiesel* v. *Florida Dep't of Natural Resources,* 479 F.2d 1261 (5th Cir. 1973); *Mifsud* v. *Palisades Geophysical Inst., Inc.,* 484 F. Supp. 159, 162 (S.D. Tex. 1980); *Adams* v. *Harris County,* 316 F. Supp. 938, 950-951 (S.D. Tex. 1970), rev'd on other grounds, 452 F.2d 994 (5th Cir. 1971), cert. denied, 406 U.S. 968 (1972).

In sum, we find nothing in the legislative history of G. L. c. 258, or in its terms, to suggest that the Commonwealth, by enacting G. L. c. 258, has waived, expressly or by implication, its Eleventh Amendment immunity to suit in Federal courts. Accordingly, we answer the question of the District Court, "No."