Leibensperger, Edward P., J.
The plaintiffs, Alexandra C. Halchak, as trustee of the Alexandra C Nominee Realty Trust, Meghan C. Halchak, as trustee of the Meghan C Nominee Realty Trust, and Douglas B. Halchak, as trustee of the D Blakely Nominee Realty Trust (collectively “Halchak”), filed this action against Patricia E. Romeo (“Romeo”) seeking a declaratory judgment (Count I) and claiming trespass (Count II). This lawsuit arises out of a property dispute concerning land owned by the Commonwealth.[3] Halchak alleges that Romeo is encroaching on, and interfering with, land owned by the Commonwealth over which Halchak has a right to build an access road. Romeo claims title to the land bearing the encroachments by adverse possession, and joins the Commonwealth in this action so that her claim may be fully adjudicated. Her third-party complaint against the Commonwealth contains four counts: action to quiet title (Count I), nuisance (Count II), declaratory judgment (Count III), and injunctive relief (Count IV). The Commonwealth now moves to dismiss all counts of Romeo’s third-party complaint under Mass.R.Civ.P. 12(b), on grounds of sovereign immunity with respect to Counts I through III and, for all counts, failure to state a claim upon which relief can be granted.
For the reasons stated below, the Commonwealth’s motion to dismiss is ALLOWED as to all counts.
BACKGROUND
The following relevant facts are taken as true from Romeo’s third-party complaint (“Complaint”) and viewed in a light most favorable to Romeo. See Blank v. Chelmsford Ob/Gyn, P.C., 420 Mass. 404, 407 (1995).
Romeo resides in North Reading, Massachusetts, along a private way referred to as Amber Road[4] to which the Commonwealth claims ownership. Complaint ¶¶6, 7. She acquired title to her property (the “Property”) by deed dated November 21, 1961. Complaint ¶6. In 1961, Romeo’s predecessor in title, Joseph Viveiros (“Viveiros”), constructed and improved a portion of Amber Road to run from Haverhill Street, now a public way, to and along the Property. Complaint ¶¶19, 20. Thus, the Property is situated at the comer of Haverhill Street and Amber Road.[5] Viveiros constructed two driveways off of Amber Road for access to the Property. One was an unpaved driveway for access to a future garage. The other was a paved driveway to reach the existing house. Electrical, telephone, and water services were installed in Amber Road,[6] as was a mailbox, all prior to the 1961 conveyance to Romeo. Complaint ¶19.
In 1961, Romeo continued to improve the Property through landscaping, installation of a dry well, and erection of a stone wall. All of the described improvements, including the mailbox and portions of the driveways, are within Amber Road, and have been maintained by Romeo continuously since 1961. Complaint ¶21.
Romeo’s title derived from a larger tract of land formerly owned by Amber P. Arey (“Arey”), by virtue of a deed into Arey dated May 7, 1932, and recorded in Book 5642, at Page 586. Complaint ¶9. By deed dated January 19, 1935, and recorded on January 21, 1935, in Book 5904, at Page 65, Arey conveyed to the Commonwealth, under the provisions of G.L.c. 132, §33, three parcels, the third of which (the “Road Conveyance”) is described as follows:
A certain parcel of land shown on a Plan to be recorded in connection with this deed being a strip of land four (4) rods wide for a road running easterly from Haverhill Street . . . designated on said Plan as Amber Road[.] . . . The land described in parcel #3 for proposed roads may be surveyed and laid out by the grantee in any manner desired, and the locations when determined shall be final. The grantor reserves to herself, her heirs, executors, and assigns the right to use said roads when made in connection with other land of the grantor. Should the Commonwealth of Massachusetts not build the proposed roads within two (2) years from the date of this instrument the grantor, her heirs, executors, or assigns, shall have the right to build them for the purposes of ingress and egress.
Complaint ¶¶10, 11, 13, 14.[7]
From the information available in the record, at the time of this conveyance, the court will infer that Arey owned the tract from which Romeo’s Property originated, and therefore, presumably, Romeo’s chain of title derived the benefit of the use of the roads described therein, including Amber Road.[8] The Plan referred to in the Road Conveyance is not recorded, and on Romeo’s information and belief, the Commonwealth did not build the roads proposed in the Road Conveyance. Complaint ¶¶12, 15.
Romeo’s deed is recorded with the Middlesex South District Registry of Deeds in Book 9944, at Page 533. Complaint ¶6. It describes her Property as Lot No. 2 on a plan identified as “Subdivision Plan of Land in North Reading, Massachusetts, dated August 10, 1961, Robert E. Anderson, Civil Engineer and Surveyor.” This plan is not in the court record. The deed further describes her Property, in pertinent part, as bounded northerly “by land of the Commonwealth of Massachusetts, Three Hundred Thirty-seven and 16/100 (337.16) feet more or less according to said plan[.]”[9]
On or about January 1, 2012, the Commonwealth’s Department of Conservation and Recreation (“DCR”), issued a DCR Construction/Access Permit (“Permit”) to Halchak for the purposes of entering upon DCR property, for the construction and improvement of “two (2) EXISTING ROADWAYS” on lands of the Commonwealth of Massachusetts, which are located off of Haverhill Street and run to the Harold Parker State Forest. One of the “existing roadways” is Amber Road. Complaint ¶24.[10] Subsequently, Halchak has altered *11 Amber Road and is continuing to attempt to alter, improve, or recover a portion of Amber Road, acting under the Permit issued by the DCR. Complaint ¶25.
DISCUSSION
Quiet Title Action, Subject Matter Jurisdiction
Romeo asserts that she has acquired a fee interest in a portion of Amber Road by adverse possession through her installation, erection, and maintenance of a paved driveway, an unpaved driveway, a stone wall, lawn, gardens, plantings, utilities, a dry well, and a mail box, beginning in the early 1960s and continuing to the present day. She further asserts that this court has jurisdiction over the matter pursuant to G.L.c. 240, §§6-10, and Part 1, Article I of the Massachusetts Declaration of Rights. The Commonwealth contends that sovereign immunity bars the quiet title action in Romeo’s Complaint.
‘The general rule of law with respect to sovereign immunity is that the Commonwealth or any of its instrumentalities ‘cannot be impleaded in its own courts except with its consent, and, when that consent is granted, it can be impleaded only in the manner and to the extent expressed . . . [by] statute.’ ”[11] DeRoche v. Mass. Comm’n Against Discrimination, 447 Mass. 1, 12 (2006), quoting Gen. Elec. Co. v. Commonwealth, 329 Mass. 661, 664 (1953). “Consent to suit must be expressed by the terms of a statute, or appear by necessary implication from them.” C&M Constr. Co. v. Commonwealth, 396 Mass. 390, 392 (1985).
The Commonwealth argues that there is no such express or apparent consent granted by the Legislature in G.L.c. 240, §§6-10, for actions to quiet title. Furthermore, the Commonwealth says the language of G.L.c. 240, §6, specifically excludes the Commonwealth because it applies to “persons,” and not to the Commonwealth.[12]
The Commonwealth made similar arguments in Polchlopek v. Commonwealth, 2010 WL 2245563 (Mass. Land Ct. June 4, 2010) (allowing plaintiff to bring quiet title action against the Commonwealth), affirmed by Polchlopek v. Div. of Fisheries & Wildlife, 81 Mass.App.Ct. 1119 (2012),[13] further appellate review denied by Polchlopek v. Div. of Fisheries & Wildlife, 462 Mass. 1104 (2012). Applying the principles of statutory construction, the court considered G.L.c. 240, §§1-10. Sections 1-5 govern actions to try title, whereby a party can require an adverse claimant to carry the burden to go forward on a title issue. See Polchlopek, 2010 WL 2245563 at *4. General Laws c. 240, §5 states that “[t]he four preceding sections shall not apply to any property, right, title or interest of the commonwealth.” No such language, however, appears with respect to the cause of action to quiet title governed by G.L.c. 240, §§6-10. “Abasic tenet of statutory construction requires that a statute be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous.” Wolfe v. Gormally, 440 Mass. 699, 704 (2004) (internal quotation omitted). Thus, the Land Court concluded that “[i]n order to give effect to G.L.c. 240, §5, it appears that an action to quiet title (sections 6-10) is an exception to the doctrine of sovereign immunity by implication from the terms of the statute.” Polchlopek, 2010 WL 2245563 at *5. Accordingly, the plaintiff in Polchlopek was allowed to proceed against the Commonwealth. I agree with the reasoning of the Land Court.
The Commonwealth’s second argument that G.L.c. 240, §6 specifically excludes the Commonwealth from quiet title actions because it applies to “persons,” is unconvincing. The relevant language in the statute sets forth procedural provisions in instances where the rights at issue involve parties who are unascer-tained, unknown, or over whom the court lacks personal jurisdiction. See §6, supra note 12. Section 10, however, states that “[t]his and the four preceding sections shall not prevent the court from also exercising jurisdiction in personam against defendants actually served with process who are personally amenable to its judgments.” In context, therefore, the use of the term, “persons” in §6 does not exclude the Commonwealth from being named as a defendant in a quiet title action under G.L.c. 240, §§6-10.
Moreover, adverse possession was previously available against the Commonwealth by statute in 1836.[14] Over time, its availability became more restrictive, barring such claims with respect to various types of “public use” lands. In 1987, the Legislature enacted a bar to many adverse possession claims against the Commonwealth. At that time the Legislature defined a class of claimants who retained the right to pursue such claims by virtue of their accrual prior to the act. This history suggests that because there is a substantive right to adverse possession against the Commonwealth by some claimants, the Legislature must have intended a procedural avenue to an adverse possession claim against the Commonwealth. That avenue is G.L.c. 240, §§6-10.
In its modem form, adverse possession against the Commonwealth is provided, in certain circumstances, by G.L.c. 260, §31, as amended through St. 1987, 564, §54. This statute is understood generally to allow a parly to assert a claim of adverse possession against the Commonwealth if the Commonwealth did not commence an action to recover the land in question within twenty years after such adverse possession began.[15] Aaron v. Boston Redevelopment Auth., 66 Mass.App.Ct. 804, 807-08 (2006).
The Legislature amended G.L.c. 260, §31, in 1987, to bar adverse possession against the Commonwealth for certain lands dedicated to a public purpose.[16] At the same time, St. 1987, c. 564, §51 amended G.L.c. 7, §40E[17] to include:
Notwithstanding any general or special law to the contrary, no person shall acquire any rights by prescription or adverse possession in any lands or *12 rights in lands held in the name of the commonwealth.
The Legislature, however, expressly provided that the amendment would not apply where the claimant was in possession of the land for at least twenty years prior to the effective date of the amendment, which was December 9, 1987. St. 1987, c. 564, §46; see DesCoteau, 5 LCR at 36. Such claimants retained the procedural right to prove an adverse possession claim. Section 46 states:
The provisions of sections fifty-one and fifty-four of this act shall not be construed to abrogate the rights of any person in an action to establish title by adverse possession who has seized or possessed real property or an interest in real property for no less than twenty years pursuant to section thirty-one of chapter two hundred and sixty of the General Laws prior to the effective date of this act.
Romeo has been in possession of the encroachment on Amber Road since 1961, when she purchased her Property, for more than twenty years prior to the effective date of St. 1987, c. 564. Because of St. 1987, c. 564, §46, the doctrine of sovereign immunity does not provide a procedural bar to Romeo’s quiet title action against the Commonwealth.
Failure to State a Claim, Mass.R.Civ.P. 12(b)(6)
When evaluating the legal sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court accepts as true all of the factual allegations of the complaint, and draws all reasonable inferences from the complaint in favor of the plaintiff. See Nader v. Citron, 372 Mass. 96, 98 (1977), abrogated on other grounds by Iannacchino v. Ford Motor Co., 451 Mass. 623 (2008). To survive a motion to dismiss, a complaint must set forth the basis for the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ...” Id. At the pleading stage, Mass.R.Civ.P. 12(b)(6) requires that the complaint set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief . . .” Id., quoting Bell Atl. Corp., 550 U.S. at 557.
Adverse Possession Against the Commonwealth
In January of 1935, the Commonwealth gained title by deed to three parcels of land, including a parcel that contained Amber Road, explicitly under the provisions of G.L.c. 132, §33. Section 33 was added by St. 1920, c. 604, and amended through St. 1936, c. 415, until it was repealed by St. 2003, 26, §391, effective July 1, 2003. It authorized the Commissioner of Conservation to purchase and develop land for state forests, and charged the Department of Conservation with reclaiming such lands, by replanting or otherwise, “for the purpose of producing timber and protecting the water supply of the commonwealth.” St. 1920, c. 604.[18]
When the Department of Conservation was created by St. 1919, c. 350, §§39-44, it comprised a division of forestry, a division of fisheries and game, and a division of animal industry.[19] In 1953, it became part of the Department of Natural Resources, which was newly created by St. 1953, c. 631, and consisted of a division of forests and parks, a division of marine fisheries, and a division of law enforcement. The division of forests and parks was the legal successor to the division of forestry and to the division of parks and recreation. St. 1953, c. 631, §2. All laws that were applied to the Department of Conservation continued to be applied to the Department of Natural Resources. St. 1953, c. 631, §4.[20] In 1975, the Department of Natural Resources was renamed the Department of Environmental Management, and retained the division of forests and parks. St. 1975, c. 706, §§33-35. Finally, in 2008, the Department of Environmental Management was renamed the Department of Conservation and Recreation, St. 2008, c. 451, §33, which today still maintains control over the state parks and forests. G.L.c. 21, §1.
In 1945, section 36A was added to G.L.c. 132, preventing the acquisition by adverse possession of lands under the control of the Department of Conservation.[21] St. 1945, c. 27. It was amended in 1975 to reflect the name change of the Department of Conservation to the Department of Environmental Management, St. 1975, c. 706, §260, and was eventually repealed in 2003, by St. 2003, c. 26, §391, effective July 1, 2003. The repeal of G.L.c. 132, §36A in 2003 was not retroactive. St. 2003, c. 26, §391. During the period relevant to Romeo’s quiet title action, Amber Road was under the control of the Department of Conservation and its successor, the Department of Environmental Management. Thus, from 1961 to 2003, adverse possession of the encroachment in Amber Road, was unavailable to Romeo, effectively barring her claim.[22]
Romeo raises two arguments with respect to whether Amber Road could be defined as being “under the control of the department of conservation” during the relevant period of time, for the purposes of G.L. 132, §36A. First, she questions whether the parcel conveyed to the Commonwealth, for a future road that the Commonwealth never built, comes within the purview of G.L. 132, §33, and thus, potentially was never actually under the control of the Department of Conservation. However, there was no requirement in G.L. 132, §36A, that lands under the control of the Department of Conservation had to meet certain criteria in order to be rightfully under the department’s control. The deed to the Commonwealth explicitly stated it was conveyed under the provisions of G.L.c. 132, §33, which authorized the Department of Con *13 servation to purchase and control such land, and the department in its various forms retained control of the land during the relevant period. That is sufficient.[23] Second, Romeo questions whether the proposed road, never laid out by the Commonwealth on a recorded plan, is something that could have come under the control of the Commissioner of Conservation. This, too, is unfounded. The status of the Commonwealth’s land purchase as being under the provisions and authority of G.L.c. 132, §33, was not contingent upon a plan of the roads being recorded. The deed stated only that there was to be a plan recorded in connection with the deed. That the plan was not recorded is not fatal to the Department of Conservation’s control over the land. Furthermore, there is evidence in the record, in Romeo’s own deed, that at least one plan existed showing the layout of the roads conveyed to the Commonwealth, including Amber Road, providing Romeo with notice of the layout.[24]
Because Romeo can assert no facts to plausibly suggest an entitlement to relief on her quiet title claim, see Iannacchino, 451 Mass. at 636, the Commonwealth’s motion to dismiss Count I of Romeo’s third-party complaint must be allowed.
Romeo’s Remaining Claims
Romeo asserts that sovereign immunity does not bar her claim for nuisance because the Supreme Judicial Court has held that the Commonwealth is not immune from liability if it creates or maintains a private nuisance which causes injury to real property. She relies on Morash & Sons, Inc. v. Commonwealth, 363 Mass. 612 (1973), alleging that the Commonwealth, through the road construction by its licensee, Halchak, is injuring her Property. Morash, however, was superseded by the Massachusetts Tort Claims Act (“MTCA”), G.L.c. 258, as stated in Irwin v. Commissioner of Department of Youth Services, 388 Mass. 810, 816 (1983). Furthermore, the Supreme Judicial Court has found that the MTCA was enacted to provide “a comprehensive and uniform regime of tort liabiliiy for public employers in the wake of our decisions” in Morash and Whitney,[25] and that actions for private nuisance are subject to the provisions of the MTCA. Morrissey v. New Eng. Deaconess Ass’n, 458 Mass. 580, 581, 588, 590 (2010), quoting Lafayette Place Assocs. v. Boston Redevelopment Auth., 427 Mass. 509, 534 (1998), cert. denied, 525 U.S. 1177 (1999). Romeo does not assert a claim under the MTCA. Thus, her claim for common-law nuisance must be dismissed.
Even if Romeo had asserted a claim under the MTCA, it would be unsuccessful under the circumstances of this case. While the MTCA abrogated the Commonwealth’s immuniiy in tort actions in many circumstances, the Legislature, for reasons of public policy, chose to preserve sovereign immunity for certain claims. Id. at 592. The exceptions to MTCA’s waiver of sovereign immunity are listed in G.L.c. 258, §10(a)-(j). As the Commonwealth points out, G.L.c. 258, §10(j)(l), provides an exception to the MTCA’s waiver of sovereign immuniiy for:
any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.
Romeo sets forth no facts to indicate that Halchak is constructing Amber Road on behalf of the Commonwealth, or that any agency relationship exists between the two parties. Halchak received a construction Permit from the DCR. That does not transform Halchak into an employee or an agent of the Commonwealth. General Laws c. 258, §10(j)(l) excepts Romeo’s action for nuisance from the MTCA’s waiver of sovereign immunity and bars her claim. Therefore, the Commonwealth’s motion to dismiss Count II is ALLOWED.
With respect to Count III, G.L.c. 231A creates a right to pursue declaratory judgment. However, “[b]y enacting the declaratory judgment procedure the Commonwealth did not consent to become a defendant in this type of suit.” Exec. Air Serv., Inc. v. Div. of Fisheries and Game, 342 Mass. 356, 358 (1961). There are some limited exceptions. Under G.L.c. 231A, §8, Romeo challenges the validity of the DCR Permit issued to Halchak to construct and improve Amber Road. Her challenge, however, rests entirely on the success of her adverse possession claim. Because Romeo’s theory of adverse possession does not survive the Commonwealth’s motion to dismiss, her request for declaratory judgment fails.
In addition, Romeo’s request for injunctive relief fails. As determined above, she has no reasonable likelihood of success on her substantive claims. In addition, she argues that the Commonwealth is an actor in the construction activily on Amber Road and, thus, can be enjoined, because Halchak, having received the Permit from the DCR, is an agent of the Commonwealth. Again, there are no facts in Romeo’s third-party complaint to indicate that Halchak is constructing Amber Road on behalf of the Commonwealth, or that any agency relationship exists between the two parties. Therefore, the Commonwealth’s motion to dismiss Counts III and IV must be allowed.
ORDER
For the foregoing reasons, the Commonwealth’s motion to dismiss is ALLOWED as to all counts of Romeo’s third-party complaint.

There is also a trespass claim involving land of one of the plaintiffs. This, however, is not pertinent to the current motion.

Amber Road is a private way, described by deed discussed infra, as being four rods wide, the equivalent of sixty-six feet.

he record indicates that ledge and other topographic features prevent access to the Property directly from Haverhill Street.

Halchak does not challenge or seek to remove these utilities.

The deed to the Commonwealth is attached to a pleading in the record and is incorporated into Romeo’s complaint by reference. See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004).

This is supported by the conveyances in Romeo’s chain of title, Complaint ¶¶16, 17, and no party asserts that Romeo cannot rightfully use Amber Road in connection with her Property.

The deed to Romeo is attached to a pleading in the record and is incorporated into Romeo’s complaint by reference. See Marram, 442 Mass. at 45 n.4.

The Permit is attached to a pleading in the record and is incorporated into Romeo’s complaint by reference. See id.

In addition, Congress may abrogate sovereignty by acting under its Fourteenth Amendment powers. Lopes v. Commonwealth, 442 Mass. 170, 175 (2004).

 §6. Civil Actions to Quiet Title.
If, in a civil action in the supreme judicial or the superior court, or in the land court, to quiet or establish the title to land situated in the commonwealth or to remove a cloud from the title thereto, it is sought to determine the claims or rights of persons unascertained, not in being, unknown or out of the commonwealth, or who cannot be actually served with process and made personally amenable to the judgment of the court, such persons may be made defendants and, if they are unascertained, not in being or unknown, may be described generally, as the heirs or legal representatives of AB, or such persons as shall become heirs, devisees or appointees of CD, a living person, or persons claiming under AB . . .
G.L.c. 240, §6.

This decision was issued by the Appeals Court pursuant to its rule 1:28.

Adverse possession against the Commonwealth became available by R.S. 1836, c. 119, §12. See DesCoteau v. Town of Newbury, 5 LCR 34, 35 (Mass. Land Ct. 1997).

General Laws c. 260, §31, as amended through St. 1987, 564, §54, provides in part:
No action for the recovery of land shall be commenced by or in behalf of the commonwealth, except within twenty years after its right or tide thereto first accrued, or within twenty years after it or those under whom it claims have been seized or possessed of the premises; . . .

See St. 1987, c. 564, §54.

General Laws c. 7, §40E was repealed, effective January 1, 2013, by St. 2012, c.165, §66. By St. 2012, c. 165, §82, also effective January 1, 2013, the Legislature added chapter 7C to the General Laws. Section 32 of this new chapter now contains the language barring all adverse possession against the Commonwealth.

“Section 1. The commissioner of conservation may purchase and hold additional lands within the commonwealth suitable for the production of timber to the extent of not more than one hundred thousand acres . . .
Section 3. The department of conservation shall proceed to reclaim the said lands, by replanting or otherwise, for the purpose of producing timber and protecting the water supply of the commonwealth..."
St. 1920, c. 604.

See also G.L.c. 21, §1 (1932 tercentenary ed.).

“A11 laws which heretofore pertained to the department of conservation, or were administered thereby, shall be administered by the department of natural resources and its divisions in accordance with the terms of the foregoing sections.” 1953, c. 631, §4.

“No person shall acquire any rights by prescription or adverse possession in any lands or rights in lands of the commonwealth under the control of the department of conservation.” St. 1945, c. 27.

Title by adverse possession can be acquired only by proof of non-permissive use which is actual, open, notorious, exclusive, adverse, and continuous for twenty years. Lawrence v. Town of Concord, 439 Mass. 416, 421, 425 (2003); see G.L.c. 260, §21. The burden of proving adverse possession is on the person claiming title thereby and extends to all of the necessary elements of such possession. Id. Romeo’s use of the encroachment in Amber Road could not have been adverse to the Commonwealth’s protected right in the land between 1961 and 2003. See St. 1945, c. 27, St. 1975, c. 706, §260.

Romeo neither suggests, nor alleges any facts to indicate, that the Commonwealth purchased the land under G.L.c. 132, §33, unlawfully.

Romeo’s deed describes her Property as Lot No. 2 on a plan identified as “Subdivision Plan of Land in North Reading, Massachusetts, dated August 10, 1961, Robert E. Anderson, Civil Engineer and Surveyor.” The deed further describes her Property, in pertinent part, as bounded northerly “by land of the Commonwealth of Massachusetts, Three Hundred Thirty-seven and 16/100 (337.16) feet more or less according to said plan[.]”

Whitney v. Worcester, 373 Mass. 208 (1977).